UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE<br><br>VAN E. JOHNSON<br><br>                            Debtor. | Chapter 13<br><br>Case No. 09-49420<br><br>Judge Elizabeth S. Stong |
| VAN E. JOHNSON,<br><br>                            Plaintiff,<br><br>           v.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>                            Defendants. | <br><br><br>Adversary Pro. No. 13-1445<br><br>Judge Elizabeth S. Stong |

## MEMORANDUM OF LAW IN SUPPORT OF THE MORGAN STANLEY DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

BINGHAM MCCUTCHEN LLP

Mary Gail Gearns
Colleen O'Loughlin
Matthew Minerva
399 Park Avenue
New York, New York  10022
Tel:  (212) 705-7000
Fax:  (212) 752-5378

Attorneys for the
Morgan Stanley Defendants

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................. 1

FACTUAL BACKGROUND............................................................................... 2

ARGUMENT ..................................................................................................... 5

I. PLAINTIFF'S CLAIMS ARE TIME-BARRED ........................................ 6

II. THE NEW YORK BANKING LAW DOES NOT APPLY HERE ....................................... 9

III. PLAINTIFF FAILS TO STATE A VALID DISCRIMINATION CLAIM .......................... 10

    A.      The FHA Does Not Permit Plaintiff's Theory of Liability.................................. 11

    B.      The ECOA Does Not Permit Plaintiff's Theory of Liability............................... 12

    C.      Plaintiff's FHA and ECOA Claims are Inadequately Pled ................................. 13

    D.      Plaintiff's Intentional Discrimination Claims Under the Civil Rights Act Are Plainly Deficient ............................................................. 15

    E.      There Is No Causal Connection Linking the Morgan Stanley Defendants' Alleged Policies and Any Discriminatory Impact ............................................... 17

CONCLUSION.................................................................................................. 18

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Adkins v. Morgan Stanley,
    No. 12-7667, 2013 WL 3835198 (S.D.N.Y. July 25, 2013).......................................................15

Anyanwu v. City of New York,
    No. 10-8498, 2013 WL 5193990 (S.D.N.Y. Sept. 16, 2013) ..................................................17

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)............................................................................................................5, 13

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)............................................................................................................5, 13

Bishop v. Henry Modell & Co.,
    No. 08-7541, 2009 WL 3762119 (S.D.N.Y. Nov. 10, 2009) ...................................................6

Brown v. Coach Stores, Inc.,
    163 F.3d 706 (2d Cir. 1998)..................................................................................................17

Cancel v. Home Depot,
    488 Fed App'x 520 (2d Cir. 2012) ........................................................................................16

Chin v. Port Authority of N.Y. & N.J.,
    685 F.3d 135 (2d Cir. 2012)....................................................................................................7

Cottrell v. Vilsack,
    915 F. Supp. 2d 81 (D.D.C. 2013) ..........................................................................................6

Garcia v. Brockway,
    526 F.3d 456 (9th Cir. 2008) .................................................................................................15

General Building Contractors Ass'n. v. Pennsylvania,
    458 U.S. 375 (1982) ..............................................................................................................16

Grimes v. Fremont General Corp.,
    785 F. Supp. 2d 269 (S.D.N.Y. 2011)....................................................................7, 8, 13, 17

Harris v. City of N.Y.,
    186 F.3d 243 (2d Cir. 1999)....................................................................................................7

Hernandez v. Sutter West Capital,
    No. 09-3658, 2010 WL 3385046 (N.D. Cal. Aug. 26, 2010) ...................................................8

Humphrey v. Citibank NA,
    No. 12-148, 2013 WL 5407195 (N.D. Miss. Sept. 25, 2013).................................................7

LeBlanc-Sternberg v. Fletcher,
    67 F.3d 412 (2d Cir. 1995).....................................................................................................10

Levey v. CitiMortgage, Inc.,
    No. 07-2678, 2009 WL 2475222 (N.D. Ill. Aug. 10, 2009) ........................................... 11-12

Lucchesi v. Experian Information Solutions, Inc.,
    226 F.R.D. 172 (S.D.N.Y. 2005) .............................................................................................7

Mahmud v. Kaufmann,
    496 F. Supp. 2d 266 (S.D.N.Y. 2007) .....................................................................................6

Mt. Holly Gardens Citizens in Action, Inc. v. Township of Mt. Holly,
    658 F.3d 375 (3d Cir. 2011)....................................................................................................10

Ng v. HSBC Mortgage Corp.,
    No. 07-5434, 2010 WL 889256 (E.D.N.Y. Mar. 10, 2010)...................................13, 15, 16, 17

Ohio Civil Rights Commission v. Wells Fargo Bank, N.A.,
    No. 11-623, 2012 WL 1288489 (N.D. Ohio Apr. 16, 2012) .....................................................8

Parejas v. General Electric Capital Services, Inc.,
    No. 10-3348, 2011 WL 2635778 (E.D.N.Y. July 5, 2011)........................................................7

Roy v. Board of County Commissioners,
    607 F. Supp. 2d 1297 (N.D. Fla. 2009) .................................................................................16

Stewart v. Bank of N.Y. Mellon,
    No. 10-791 2011 WL 3267321 (D. Ariz. July 29, 2011).........................................................12

Williams v. 2000 Homes Inc.,
    No. 09-16, 2009 WL 2252528 (E.D.N.Y. July 29, 2009).................................................13, 15

Wiltshire v. Dhanraj,
    421 F. Supp. 2d 544 (E.D.N.Y. 2005) ...................................................................................16

Wright v. Castle Point Mortg.,
    No. 05-4851, 2006 WL 1468678 (D.N.J. May 24, 2006)........................................................12

## STATUTES

24 C.F.R. § 100.125 .................................................................................................................11

24 C.F.R. § 100.125(b)(2)........................................................................................................11

15 U.S.C. § 1691(a)(1)..............................................................................................................12

15 U.S.C. § 1691a(e) ................................................................................................12

15 U.S.C. § 1691e(f) ..................................................................................................6

42 U.S.C. § 1981(a) ..................................................................................................15

42 U.S.C. § 1982 ......................................................................................................16

42 U.S.C. § 3605(a) ..................................................................................................11

42 U.S.C. § 3605(b)(1)(B) ........................................................................................11

42 U.S.C. § 3613(a)(1)(A) ..........................................................................................6

NY Banking Law § 6-l(1)(g)(i) ..................................................................................9

NY Banking Law § 6-l(1)(g)(ii) ...............................................................................10

NY Banking Law § 6-l(6) .......................................................................................6, 9

NY Banking Law § 6-l(13) .........................................................................................9

## OTHER AUTHORITIES

Al Yoon, *Lend America Ceases Operations, Mortgage Lending*, Reuters (Dec. 1, 2009) .............5

Press Release No. 09-217, Brian Sullivan, *FHA and Ginnie Mae Taken Action Against
Lend America* (Nov. 30, 2009) ................................................................................5

Morgan Stanley Capital I Inc., Morgan Stanley & Co. LLC and Morgan Stanley Mortgage Capital Holdings LLC, formerly known as Morgan Stanley Mortgage Capital Inc. (collectively, the "Morgan Stanley Defendants"), by and through their undersigned counsel, respectfully submit this memorandum of law in support of their motion to dismiss the amended complaint (the "Amended Complaint" or "AC") filed by plaintiff Van E. Johnson ("Plaintiff").

## PRELIMINARY STATEMENT

Seven years after Plaintiff procured a mortgage loan from Lend America, he now alleges that the Morgan Stanley Defendants violated New York's Banking Law and discriminated against him in connection with his loan. The crux of the Amended Complaint is that Lend America allegedly engaged in predatory lending targeted at African-Americans and that the Morgan Stanley Defendants supposedly enabled those efforts. Even if those allegations had merit (and they do not), each and every one of Plaintiff's claims suffers the same fundamental defect: it is untimely. In an apparent effort to cure this defect, Plaintiff makes passing reference to the "continuing violations" doctrine. But the Amended Complaint does not contain any factual allegations that could possibly support application of that theory here. Accordingly, all of Plaintiff's claims are time-barred and must be dismissed.

Plaintiff's claims fail for other, independent reasons as well. The New York Banking Law claim fails as against the Morgan Stanley Defendants for the threshold reasons that none of them served as the lender or mortgage broker for the loan at issue and the loan is not "high cost" and thus does not come within the purview of the statute.

Plaintiff's disparate impact discrimination claims under the Fair Housing Act ("FHA") and Equal Credit Opportunity Act ("ECOA") fare no better. Plaintiff's attenuated theory -- that Lend America's practices had a disparate impact on African-American borrowers and that the Morgan Stanley Defendants enabled Lend America's practices by securitizing its

loans and extending financing to the company -- is not actionable. Even if the statutes recognized Plaintiff's "enabling" theory of liability, which they do not, the theory is devoid of any factual support. The Amended Complaint does not contain sufficient allegations concerning the supposed discriminatory impact of Lend America's lending practices ***much less*** any detail regarding how the Morgan Stanley Defendants allegedly participated in or enabled those predatory practices.

Plaintiff also asserts patently frivolous intentional discrimination claims under the Civil Rights Act. In order to maintain these claims, Plaintiff must adequately allege that the Morgan Stanley Defendants intended to discriminate against Plaintiff based on the fact that he is an African-American. Predictably, the allegations in the Amended Complaint do not come close to satisfying that requirement.

For all these reasons, the Court should dismiss the Amended Complaint in its entirety as to the Morgan Stanley Defendants.

## FACTUAL BACKGROUND

In 2006, Plaintiff decided to purchase the property located at 128 Howard Avenue, Brooklyn, New York. (AC ¶ 21). According to the adjustable rate note executed by Plaintiff on January 24, 2006, he obtained a mortgage loan in the amount of $281,200 from Lend America.[1] The Federal Truth in Lending Disclosure Statement executed by Plaintiff the same day indicates that the mortgage loan has a 7.144% annual percentage rate. (Ex. A to Schiavo Decl.).

---

[1]    See Exhibit B to the Declaration of Nicole E. Schiavo, executed January 24, 2013 (the "Schiavo Decl."), which was submitted in connection with the Memorandum of Law in Support of Defendants Wells Fargo Bank, N.A. and Bank of America, National Association, as Trustee's Motion to Dismiss Amended Complaint, dated November 6, 2013 (ECF No. 12) ("Trustees' Brief"). The Morgan Stanley Defendants incorporate the Trustees' Brief herein by reference.

On October 27, 2009, Plaintiff commenced a case under Chapter 13 of the Bankruptcy Code. (AC ¶ 9). After six unsuccessful tries, Plaintiff's Seventh Amended Chapter 13 Plan was ultimately confirmed by the Court on September 18, 2012. (Chapter 13, Case No. 09-49420, ECF No. 124).

In an adversary proceeding commenced in June 2010 (the "First Adversary Proceeding" or "First AP"), Plaintiff asserted that he was a victim of racial discrimination in connection with the same mortgage loan at issue in this case. See Johnson v. Ideal Mortg. Bankers, Ltd., Adv. Pro. No. 10-1138 (Bankr. E.D.N.Y.). Plaintiff's complaint against Lend America and others asserted claims of racial discrimination in violation of, among other things, the FHA, ECOA and Civil Rights Act. See id. at ECF No. 1 (First AP Compl. ¶¶ 32-46). According to Plaintiff, the defendants' practices, which included a Discretionary Pricing Policy, had a "widespread discriminatory impact on minority applicants for home mortgage loans, in violation of ECOA and the FHA." See id. at ECF No. 1 (First AP Compl. ¶ 2). None of the Morgan Stanley Defendants was named as a defendant in the First Adversary Proceeding, which was ultimately dismissed by the Court on July 12, 2012. See id. at ECF No. 39.

More than three years later, Plaintiff commenced this Adversary Proceeding on August 27, 2013 by filing a complaint, which he subsequently amended on October 4, 2013. Plaintiff advances three principal theories in the Amended Complaint. First, Plaintiff asserts New York's Banking Law was violated because the mortgage loan was "high cost" and certain practices and procedures that apply to "high cost" mortgage loans were not properly followed. (AC ¶¶ 32-51).

Second, Plaintiff asserts that he was subjected to racial discrimination in violation of the FHA and ECOA based upon a disparate impact theory. (AC ¶¶ 52-70). According to the Amended Complaint, Lend America targeted African-Americas because it found they were

easily manipulated and "black borrowers are more likely than white borrowers to apply for credit from Lend America." (AC ¶¶ 7, 54). Lend America allegedly employed a "Discretionary Pricing Policy" which was unrelated to a borrower's objective credit characteristics such as credit history, credit score, debt-to-income ratio and loan-to-value ratios. (AC ¶ 54). Pursuant to this Discretionary Pricing Policy, persons with identical or similar credit scores were required to pay different amounts for their mortgage loans. (AC ¶ 60). Although the policy was "facially neutral (insofar as Lend America used the same or effectively the same policy for all credit applicants)," it had an allegedly "disproportionate[] adverse effect on blacks compared to similarly situated whites in that blacks pay disparately more discretionary charges (both in frequency and amount) than similarly situated whites." (AC ¶ 61).

        As to the Morgan Stanley Defendants' alleged role, Plaintiff appears to contend that they essentially enabled Lend America's discriminatory lending by purchasing or funding loans originated by Lend America for purposes of bundling the loans into securities. (AC ¶¶ 3, 5). The alleged discriminatory practices and policies employed by the Morgan Stanley Defendants are all conclusory. According to Plaintiff, the Morgan Stanley Defendants allegedly (1) purchased loans with excessive debt-to-income (DTI) ratios, packaging and securitizing the loans, syndicating the resulting securities for sale to investors, and receiving significant fees in this process; (2) purchased and securitized mortgage loans from Lend America where the loan-to-value ratio exceeded 100%; (3) somehow "required" Lend America to issue loans with adjustable rates and prepayment penalties; (4) provided necessary funding--in the form of warehouse lending, pre-commitments to purchase loans and funding for loan closings--to Lend America that allowed it to remain in business until it was stopped by enforcement authorities from conducting business; and (5) purchased loans that deviated substantially from basic underwriting standards. (AC ¶ 8). Plaintiff does not support these allegations with any facts.

For example, Plaintiff never alleges the amount and type of funding the Morgan Stanley Defendants supposedly provided to Lend America, the volume of loans the Morgan Stanley Defendants purchased from Lend America, or how the Morgan Stanley Defendants "required" Lend America to issue loans with adjustable rates and prepayment penalties.  In any event, any alleged policies or practices the Morgan Stanley Defendants may have had with respect to Lend America could not have continued past December 2009, when Lend America ceased operating.[2]

Finally, Plaintiff claims that "Defendants" intentionally discriminated against him in violation of the Civil Rights Act by "charging higher interest rates and other fees and costs than were charged to similarly situated non-minority borrowers."  (AC ¶¶ 73, 80).  It is unclear if Plaintiff purports to bring the Civil Rights Act claims against the Morgan Stanley Defendants as none of them originated the mortgage loan at issue and none of the supporting allegations concern any conduct on the part of the Morgan Stanley Defendants.  (AC ¶¶ 71-82).

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A complaint with only "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. . . . Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  Id. (quoting Twombly, 550 U.S. at 555, 557) (internal quotations omitted).  If a complaint does not contain a sufficient level of detail "to raise a right to relief above the speculative level," it should be dismissed.  Twombly, 550 U.S. at 555.

---

[2]    See Al Yoon, *Lend America Ceases Operations, Mortgage Lending*, Reuters (Dec. 1, 2009); Press Release No. 09-217, Brian Sullivan, FHA and Ginnie Mae Take Action Against Lend America (Nov. 30, 2009) (on file with HUD) (withdrawing FHA approval of Lend America).

As explained below, Plaintiff's claims against the Morgan Stanley Defendants must be dismissed as time-barred.  See Point I, infra.  Even if they were not time-barred (and they are), Plaintiff's claims fail adequately to state a claim for relief.  See Points II & III, infra.

## I.    PLAINTIFF'S CLAIMS ARE TIME-BARRED

Plaintiff's FHA and ECOA claims both have a two-year statute of limitations.  42 U.S.C. § 3613(a)(1)(A) (two-year statute of limitations with respect to a FHA violation runs from the "occurrence or the termination of an alleged discriminatory housing practice"); 15 U.S.C. § 1691e(f) (two-year statute of limitations with respect to an ECOA claim runs from the "date of the occurrence of the violation").[3]  The Civil Rights Act claims arising under Section 1981 and Section 1982 have three-year statutes of limitations.  See Mahmud v. Kaufmann, 496 F. Supp. 2d 266, 271-72 (S.D.N.Y. 2007) (explaining three-year statute of limitations applies to Section 1981 claims challenging the making or enforcement of contracts); Bishop v. Henry Modell & Co., No. 08-7541, 2009 WL 3762119, at *4 (S.D.N.Y. Nov. 10, 2009) (holding three-year statute of limitations applies to claims asserted under Section 1982).  A claim under New York's Banking Law "must be commenced within six years of origination of the high-cost home loan."  NY Banking Law § 6-l(6).

Plaintiff procured his allegedly discriminatory mortgage loan in 2006 and did not file the Amended Complaint until more than seven years later on October 4, 2013.[4]  Thus, the FHA and ECOA claims were barred as of 2008, the Civil Rights Act claims expired as of 2009,

---

[3]    The statute of limitations that applies to an ECOA claim was amended in 2010.  The new five-year limitations period, however, does not apply to claims arising before the amendment's effective date of July 21, 2011.  See, e.g., Cottrell v. Vilsack, 915 F. Supp. 2d 81, 90 & n.7 (D.D.C. 2013).  In any event, Plaintiff's ECOA claim is time-barred even if the five-year statute applies.

[4]    Plaintiff fares no better if the Court were to consider the date on which the initial complaint was filed in this adversary proceeding (i.e., August 27, 2013).

and the claim with the longest statute of limitations (i.e., the New York Banking Law claim), was barred as of 2012.  See, e.g., Grimes v. Fremont Gen. Corp., 785 F. Supp. 2d 269, 290 (S.D.N.Y. 2011) (holding FHA claim was time-barred and explaining "Plaintiff's claim that Defendants intentionally provided them with an unfair loan because of their race is based on conduct that, with respect to Plaintiffs, undoubtedly concluded with the close of the transaction"); Parejas v. Gen. Elec. Capital Servs., Inc., No. 10-3348, 2011 WL 2635778, at *3 (E.D.N.Y. July 5, 2011) (dismissing FHA and ECOA claims as time-barred and explaining, "the record demonstrates that plaintiff entered into the allegedly discriminatory transactions (i.e., the loan agreements), more than two years prior to the filing of the instant action."); see also Humphrey v. Citibank NA, No. 12-148, 2013 WL 5407195, at *2-3 (N.D. Miss. Sept. 25, 2013) (dismissing FHA claim as time-barred and explaining that such a claim "hones in on the origination and consummation of her loan") (citation and quotation omitted).

Plaintiff has signaled that he may attempt to rescue his expired claims by relying on a "continuing violations" theory.[5]  (AC ¶ 2).  But even under the continuing violation theory, Plaintiff must allege "both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy."  Harris v. City of N.Y., 186 F.3d 243, 250 (2d Cir. 1999); Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 159 n.12 (2d Cir. 2012) (explaining that "a disparate impact claim requires plaintiffs to plead and prove that defendants, within the limitations period, used [a] . . . practice that had a disparate impact") (emphasis in

---

[5]    The Amended Complaint makes no reference to the "discovery rule" as a basis for excusing Plaintiff's failure to timely assert his claims -- and for good reason.  Even if any of Plaintiff's claims were subject to the discovery rule, the complaint Plaintiff filed in the First Adversary Proceeding plainly shows he "discovered" his discrimination claims no later than June 2010.  See Factual Background at p. 3, supra.  Moreover, the claims raised here do not relate back to the First Adversary Proceeding.  See, e.g., Lucchesi v. Experian Information Solutions, Inc., 226 F.R.D. 172, 174-75 (S.D.N.Y. 2005) (holding, "[t]he Federal Rules of Civil Procedure contemplates the relation back of pleadings only in the context of a single proceeding").

original).  The total of Plaintiff's allegations with respect to his continuing violation theory is that "the demand for collection of this loan persist [sic]."  (AC ¶ 2).[6]  This conclusory allegation cannot save Plaintiff's untimely claims for at least two reasons.

      First, Plaintiff fails to allege that the Morgan Stanley Defendants made any sort of demand for collection of the loan and, if there had been such a demand by the Morgan Stanley Defendants, when it was made.  See, e.g., Grimes, 785 F. Supp. 2d at 295 (rejecting application of continuing violation theory with respect to FHA and ECOA claims where Plaintiff failed to provide "dates on which this [continuing] conduct purportedly began or concluded.").  Indeed, because the Morgan Stanley Defendants did not originate the loan or own it at the time of the commencement of Plaintiff's bankruptcy proceedings, it defies logic to suggest that they made any demand for payment.

      Second, courts properly reject the argument that the obligation to make payments on an allegedly discriminatory loan gives rise to a continuing violation, holding that any ongoing payment obligation is merely the effect of a prior alleged violation, not a new or separate violation.  See Hernandez v. Sutter W. Capital, No. 09-3658, 2010 WL 3385046, at *3 (N.D. Cal. Aug. 26, 2010) (holding "payments Plaintiff made pursuant to the loans were effects of any violation, not new violations in their own right."); see also Ohio Civil Rights Comm'n v. Wells Fargo Bank, N.A., No. 11-623, 2012 WL 1288489, at *5 (N.D. Ohio Apr. 16, 2012) (holding that with respect to "discriminatory lending claims, the conduct giving rise to the discrimination claim is the issuance of the unfavorable, discriminatory loan and payments made on the loan do not constitute separate violations.").

---

[6]    Plaintiff does not allege that the Morgan Stanley Defendants' alleged policies and practices with respect to enabling Lend America constitute a continuing violation, nor would such an allegation have merit because Lend America ceased operating in 2009.

For these reasons, all of Plaintiff's claims are untimely and should be dismissed.

## II.    THE NEW YORK BANKING LAW DOES NOT APPLY HERE

Plaintiff's New York Banking Law claim is untimely and also fails for two threshold reasons. First, the private right of action authorized under the statute must be brought against the "lender" or "mortgage broker." NY Banking Law § 6-l(6). It is undisputed that none of the Morgan Stanley Defendants played either role in connection with Plaintiff's transaction. Although Plaintiff attempts to invoke Section 6-l(13) of the statute as to the "other defendants" who allegedly were "assignee[s] of the loan," AC ¶ 49, that section is operative only when an assignee brings an action "to enforce a loan against a borrower in default." NY Banking Law § 6-l(13). Neither requirement is met here because none of the Morgan Stanley Defendants currently owns Plaintiff's mortgage loan nor has any of them brought an action to enforce it.

Second, the loan at issue was not "high-cost" pursuant to either the annual percentage rate threshold ("APR") or the points and fees threshold. Under the APR threshold, a loan is high-cost if "at consummation of the transaction" the APR of the loan "exceeds eight percentage points over the yield on treasury securities having comparable periods of maturity to the loan maturity measured as of the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the lender. . . ." NY Banking Law § 6-l(1)(g)(i). Here, the loan carried a 7.144% at consummation, which is well less than the threshold of 12.83% (alleged treasury securities yield of 4.83% plus 8%).[7] See also Trustees' Brief at 12-13.

---

[7]    Plaintiff refers to the maximum rate of 13.375% that could apply to the loan (AC ¶ 42), under the theory that the rate at consummation was "initial or introductory." NY Banking Law § 6-l(g)(i). Even if Plaintiff were correct in characterizing the 7.144% rate as initial or introductory, Plaintiff filed for bankruptcy more than one year before the rate was supposed to reset on February 1, 2011. See Ex. B to Schiavo Decl. In any event, the formula in the note for calculating the new interest rate on February 1, 2011 is the average of interbank offered rates for

Plaintiff also claims that the points and fees associated with his loan exceeded 5% of the loan amount thus making it a "high-cost" loan. NY Banking Law § 6-l(1)(g)(ii). According to Plaintiff, the total of $23,578.86 in points and fees for the loan exceeded the high-cost threshold of $12,881.06 (i.e., the loan amount ($281,200) less alleged points and fees ($23,578.86), multiplied by 5%). (AC ¶ 40). But, at a minimum, Plaintiff has improperly included as points and fees: (i) a $600 recording fee; (ii) a mortgage tax of $5,032; (iii) $4,921 in city, county and state transfer taxes; (iv) hazard insurance of $1,179; and (v) title insurance of $3,042. See Trustees' Brief at 13-15 (explaining legal bases for excluding those amounts). Accounting for these errors, the total points and fees is reduced to $8,804.86, which is less than the 5% threshold of $13,619.76 (i.e., the loan amount of ($281,200) less points and fees ($8,804.86), multiplied by 5%). See id.

## III.    PLAINTIFF FAILS TO STATE A VALID DISCRIMINATION CLAIM

Plaintiff's discrimination claims are rife with other fatal defects. Plaintiff appears to allege that the Morgan Stanley Defendants' policies and practices had a disparate impact on African-Americans in violation of the FHA and ECOA. (AC ¶¶ 52-70).[8] Plaintiff essentially seeks to hold the Morgan Stanley Defendants responsible for "enabling" Lend America's allegedly discriminatory lending practices. But Plaintiff's attenuated theory is not actionable

---

six month U.S. dollar-denominated deposits in the London market ("LIBOR") plus 2.25%. See id. As of January 3, 2011 (the first business day of January 2011), LIBOR was .45594%, and the total interest rate that would have applied to Plaintiff's loan was 2.70%.

[8]    The Second Circuit has recognized disparate impact claims under the FHA. See LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 425 (2d Cir. 1995). However, the United States Supreme Court recently granted a writ of certiorari on the question of whether disparate impact claims are cognizable under the FHA in a case that settled prior to oral argument. See Mt. Holly Gardens Citizens in Action, Inc. v. Twp. of Mt. Holly, 658 F.3d 375 (3d Cir. 2011), cert. granted, 133 S. Ct. 2824 (2013), cert. dismissed, 134 S. Ct. 636 (2013). The Morgan Stanley Defendants note their disagreement with Second Circuit precedent on this issue in order to preserve it.

under the FHA or ECOA (see Points A & B, infra) and, in any event, it is inadequately pled. See Point C, infra. Plaintiff's Civil Rights Act claims are insufficient because he has not (and cannot) sufficiently allege any intentional discriminatory conduct on the part of the Morgan Stanley Defendants. See Point D, infra. Finally, all Plaintiff's discrimination claims fail for lack of causation. See Point E, infra.

### A.    The FHA Does Not Permit Plaintiff's Theory of Liability

The relevant section of the FHA provides that "[i]t shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin. 42 U.S.C. § 3605(a). "Residential real estate-related" transactions include the "purchasing of loans . . . secured by residential real estate." Id. at § 3605(b)(1)(B).

Applying the statutory language here, the Morgan Stanley Defendants were prohibited from discriminating in their "purchasing of loans" in the secondary market. But there is no statutory basis for them to be held liable for an unaffiliated lender's alleged discrimination in its loan transactions with borrowers. Indeed, the implementing regulation makes this explicit. See 24 C.F.R. § 100.125. It renders it unlawful for an "entity engaged in the purchasing of loans . . . secured by residential real estate[] to refuse to purchase such loans . . . or to impose different terms or conditions for such purchases, because of race." Id. at § 100.125(a). It also renders it unlawful for such an entity to "[p]ool[] or package loans . . . differently because of race." Id. at § 100.125(b)(2).

Because Plaintiff does not allege that the Morgan Stanley Defendants discriminated in purchasing loans from Lend America, or that they pooled or package the loans any differently because of race, his FHA claim fails as a matter of law. See, e.g., Levey v.

CitiMortgage, Inc., No. 07-2678, 2009 WL 2475222, at *2 (N.D. Ill. Aug. 10, 2009) (dismissing FHA claim and explaining, "[w]hile FHA regulations prohibit purchasers of loans from . . . imposing different terms or conditions for such purchases based on race . . . Plaintiffs' allegations cannot be construed to make out such a claim because they have not pled any facts related to the sale or transfer of the loans from [the originator] to CitiMortgage"); see also Stewart v. Bank of N.Y. Mellon, No. 10-791, 2011 WL 3267321, at *4 (D. Ariz. July 29, 2011) ("Fundamentally, FHA claims are based upon discriminatory activity by the Defendant," and 24 C.F.R. § 100.125(a) "only provides FHA liability for assignees who themselves engage in unlawful conduct.") (internal quotation marks omitted); Wright v. Castle Point Mortg., No. 05-4851, 2006 WL 1468678, at *4 (D.N.J. May 24, 2006) ("Because Plaintiff alleges discrimination in the terms of the loan contract, and Wells Fargo did not originate the loan, Plaintiff has failed to state a cause of action against Wells Fargo.").

### B.    The ECOA Does Not Permit Plaintiff's Theory of Liability

Plaintiff's ECOA claim similarly fails at the threshold.  Under Section 1691(a)(1) of the ECOA, "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction on the basis of race, color, religion, national origin, sex or marital status, or age."  15 U.S.C. § 1691(a)(1) (emphasis added).  A "creditor" is defined as any person "who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit."  Id. at § 1691a(e).

It is undisputed that none of the Morgan Stanley Defendants was the lender here. Nor can the Morgan Stanley Defendants be liable as assignees because they did not participate in the decision to extend credit to Plaintiff.  Indeed, the Amended Complaint contains only one

allegation with respect to Plaintiff's loan that "Defendants are creditors as defined in ECOA, and in the ordinary course of its business, participated in the decision of whether or not to extend credit to the Plaintiffs." (AC ¶ 66). But that is the exact sort of formulaic pleading that has been firmly rejected by the Supreme Court. See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570.

### C.      Plaintiff's FHA and ECOA Claims are Inadequately Pled

Plaintiff's disparate impact claims are based upon a "reverse redlining" theory. "In essence, reverse-redlining discriminates by lending to a group of persons on less favorable terms than those borrowers would have received if they were outside that particular class of persons." Ng v. HSBC Mortg. Corp., No. 07-5434, 2010 WL 889256, at *11 (E.D.N.Y. Mar. 10, 2010). Courts articulate four elements for reverse redlining claims: "(1) plaintiff is a member of a protected class; (2) plaintiff applied for and was qualified for loans; (3) the loans were made on grossly unfavorable terms; and (4) the transaction was discriminatory," which "may be satisfied by allegations of . . . disparate impact on the protected class." Williams v. 2000 Homes Inc., No. 09-16, 2009 WL 2252528, at *5 (E.D.N.Y. July 29, 2009) (citing cases). At a minimum, Plaintiff has failed adequately to plead the second and fourth elements required to state a claim.

Plaintiff asserts in purely conclusory fashion that he "qualified for a best possible rate, a fixed rate mortgage and long term loan like similarly placed non-minority American." (AC ¶ 59). But Plaintiff does not allege any facts supporting that allegation such as facts relating to his income and credit that would have qualified him for a better loan, or what the terms of that loan would have been. The failure to adequately allege that he was qualified for a better loan is fatal. See, e.g., Grimes, 785 F. Supp. 2d at 292 n.33.

Nor has Plaintiff adequately alleged the supposedly discriminatory impact of the Morgan Stanley Defendants' policies. According to Plaintiff, "[t]he Discretionary Pricing Policy, although facially neutral (insofar as Lend America used the same or effectively the same

policy for all credit applicants), had a disproportionately adverse effect on blacks compared to similarly situated whites in that blacks pay disparately more discretionary charges (both in frequency and amount) than similarly situated whites."  (AC ¶ 61).  The only "facts" in the Amended Complaint alleged in support of this entirely speculative theory are contained in a chart that purports to show the mortgage loan applications received by Lend America in 2006.  (AC ¶ 7).  These allegations are wholly insufficient.

As an initial matter, the few statistics provided by Plaintiff show only that more African-Americans applied for Lend America loans in 2006 than Caucasians or other minority groups.  (AC ¶ 7).  Plaintiff makes no allegations with respect to, among other things, how many loans Lend America ultimately made, how many "high-cost" loans Lend America allegedly made, or the percentage of allegedly "high-cost" loans that were made to African-Americans as opposed to other groups.  Stated differently, Plaintiff has not identified any <u>actual</u> discriminatory impact on African-Americans caused by Lend America's admittedly neutral policies.

But there is an even more fundamental problem.  The only statistics or other "factual" allegations provided in the Amended Complaint relate to Lend America; there is no factual support whatsoever for Plaintiff's wholly conclusory allegation that the Morgan Stanley Defendants' entirely non-discriminatory policies had a discriminatory impact.  For example, although Plaintiff alleges that "Morgan Stanley regularly purchased and securitized mortgage loans from Lend America where the loan-to-value ratio exceeded 100%," there are no factual allegations supporting that conclusory assertion.  (AC ¶ 8).  Similarly, Plaintiff claims that the Morgan Stanley Defendants provided funding to Lend America in the form of "warehouse lending, precommitments to purchase loans, and funding for loan closings," but again he provides no factual support for that assertion.  (AC ¶ 8).

At bottom, Plaintiff's FHA and ECOA claims constitute "little more than buzzwords and conclusory labels" and should be dismissed on that basis. Ng, 2010 WL 889256, at *12 (dismissing FHA and ECOA reverse redlining disparate impact claims); Williams, 2009 WL 2252528, at *5 (dismissing FHA reverse redlining claim and finding plaintiff's allegations "of disparate impact . . . conclusory."). It is not sufficient for Plaintiff to recite a laundry list of alleged discriminatory policies and practices, without factual support, that have no connection whatsoever to this case.[9]

### D.    Plaintiff's Intentional Discrimination Claims Under the Civil Rights Act Are Plainly Deficient

Under Section 1981 of the Civil Rights Act, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . ." 42 U.S.C. § 1981(a). Pursuant to Section 1982, "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens

---

[9]    The five supposedly discriminatory policies that form the basis of Plaintiff's claims against the Morgan Stanley Defendants (AC ¶ 8) are nearly identical to the five allegedly discriminatory policies relied upon by plaintiffs in another, unrelated action. Adkins v. Morgan Stanley, No. 12-7667, 2013 WL 3835198, at *1 (S.D.N.Y. July 25, 2013). But the court's holding in Adkins, that the FHA claims at issue there were timely and adequately pled, does not help Plaintiff for several reasons. First, the court's conclusion in Adkins that FHA claims are subject to a discovery rule runs contrary to the weight of authority on this issue. See, e.g., Garcia v. Brockway, 526 F.3d 456, 465 (9th Cir. 2008) (holding "the statute of limitations for private civil actions [under the FHA] begins to run when the discriminatory act occurs-not when it's encountered or discovered"). Second, at the very latest, Plaintiff discovered his FHA claims in 2010 when he filed the First Adversary Proceeding and thus the two-year statute of limitations would have run by 2012. Third, the alleged facts in Adkins are substantially different. Adkins involves a different lender (New Century Mortgage Company), different borrowers, and a different geographic area that was allegedly impacted by the purportedly discriminatory practices. The plaintiffs in Adkins also alleged, unlike here, that Morgan Stanley bought and securitized 48%, 34% and 41% of the loans originated by New Century in 2005, 2006 and 2007, respectively. See Adkins v. Morgan Stanley, No. 12-7667, ECF No. 1 (Compl.) at ¶ 38. Furthermore, the Court in Adkins found that the plaintiffs had alleged "in detail the effect that [the mortgage lender's] lending had upon the African-American community in the Detroit area." 2013 WL 3835198, at *9. No such detail is provided in the Amended Complaint here.

thereof to inherit, purchase, lease, sell, hold and convey real and personal property."  42 U.S.C. § 1982.  Significantly, both statutes prohibit <u>intentional discrimination</u>; a disparate impact theory is not cognizable under either Section 1981 or Section 1982.  <u>Gen. Bldg. Contractors Ass'n. v. Pennsylvania</u>, 458 U.S. 375, 389 (1982) (holding Section 1981 reaches only purposeful discrimination); <u>Cancel v. Home Depot</u>, 488 Fed App'x 520, 521 (2d Cir. 2012) (holding a disparate impact theory is not a valid basis for a Section 1981 claim); <u>Roy v. Bd. of Cnty. Comm'rs</u>, 607 F. Supp. 2d 1297, 1305 (N.D. Fla. 2009) (holding to prevail on Section 1981 or Section 1982 claim, plaintiff must prove intentional discrimination based on race).

To state a claim under Section 1981, plaintiff must allege:  "(1) that the plaintiff belongs to a racial minority; (2) that the defendants intended to discriminate against him on account of his race; and (3) that the discrimination he suffered involved a form of activity covered in the statute."  <u>Ng</u>, 2010 WL 889256, at *12; <u>Wiltshire v. Dhanraj</u>, 421 F. Supp. 2d 544, 555 (E.D.N.Y. 2005).  Similarly, a Section 1982 claim requires a plaintiff to allege:  "(1) the defendant's racial animus; (2) intentional discrimination; and (3) that the defendant deprived plaintiff of his rights because of his race."  <u>Ng</u>, 2010 WL 889256 at *12.  In order to stave off dismissal of his claim, Plaintiff must allege with "factual specificity the events of the intentional and purposeful discrimination as well as the racial animus constituting the motivating factor behind the defendants' conduct."  <u>Id.</u> (citation and quotation omitted).

Both the Section 1981 and Section 1982 claims fail because Plaintiff does not (and cannot) adequately allege any intentional discriminatory conduct on the part of the Morgan Stanley Defendants.  To the contrary, the vast majority of the Amended Complaint is grounded in a disparate impact theory (albeit a deficient one).  <u>See, e.g.</u>, AC ¶ 62 ("The disparate impact suffered by blacks is a direct result of Defendants, Lend America and Morgan Stanley [sic] Discretionary Pricing Policy . . .").

In cursory fashion, Plaintiff alleges that "Defendant" intentionally discriminated against Plaintiff by "charging higher interest rates and other fees and costs than were charged to similarly situated non-minority borrowers." (AC ¶¶ 73, 80). Even assuming, for argument's sake, that those allegations were directed at the Morgan Stanley Defendants, which seems improbable because none of them was the lender here, those sorts of "[n]aked, conclusory allegations or assertions are not adequate to state a [Civil Rights Act] claim." Ng, 2010 WL 889256, at *12; see also Grimes, 785 F. Supp. 2d at 296 (dismissing Section 1981 and Section 1982 claims because Plaintiffs failed to "provide any facts in support of their contention that intentional discrimination occurred.").

> **E.      There Is No Causal Connection Linking the Morgan Stanley Defendants' Alleged Policies and Any Discriminatory Impact**

In order to maintain his discrimination claims, Plaintiff must causally connect the Morgan Stanley Defendants with some discriminatory impact or action. See Brown v. Coach Stores, Inc., 163 F.3d 706, 712 (2d Cir. 1998); Anyanwu v. City of N.Y., No. 10-8498, 2013 WL 5193990, at *8 (S.D.N.Y. Sept. 16, 2013). There is no such connection in the Amended Complaint. While Plaintiff alleges that "Morgan Stanley dictated the types of loans that Lend America issued," there is nothing in the way of factual allegations to support that conclusory assertion, nor could there be. (AC ¶ 8). In any event, the Amended Complaint wholly fails to describe the supposed discriminatory impact that resulted from the loans issued by Lend America or the discriminatory impact allegedly caused by the Morgan Stanley Defendants' conduct. The lack of any causal connection is fatal to Plaintiff's discrimination claims.

## <u>CONCLUSION</u>

For the foregoing reasons, the Morgan Stanley Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety and grant such other and further relief it deems proper.

Dated:    New York, New York                      Respectfully submitted,
         January 15, 2014
                                            BINGHAM MCCUTCHEN LLP

                                            By:  /s/ Mary Gail Gearns
                                                Mary Gail Gearns
                                                  Colleen O'Loughlin
                                                  Matthew Minerva
                                          399 Park Avenue
                                          New York, New York 10022
                                          Tel:  (212) 705-7000
                                          Fax:  (212) 752-5378
                                          Email:  marygail.gearns@bingham.com
                                          Email:  colleen.oloughlin@bingham.com
                                          Email:  matthew.minerva@bingham.com

                                          Attorneys for the
                                          Morgan Stanley Defendants