UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:                                                                                          Chapter 13

    VAN E. JOHNSON,
                                              Case No. 09-49420-ESS
                        Debtor.
-----------------------------------------------------------------x

    VAN E. JOHNSON,

                        Plaintiff,
                                              Adv. Proc. No. 13-01445-ESS
-against- :

    WELLS FARGO BANK, N.A. d/b/a
    AMERICA'S SERVICING COMPANY,
    BANK OF AMERICA, NATIONAL ASSOCIATION,
    AS TRUSTEE FOR MORGAN STANLEY
    TRUST 2006-6AR, MORGAN STANLEY
    CAPITAL I INC., MORGAN STANLEY & CO.,
    MORGAN STANLEY MORTGAGE CAPITAL INC.,
    IDEAL MORTGAGE BANKERS D/B/A
    LEND AMERICA, KR MANAGEMENT LLC,
    MALCO REAL ESTATE INC., AND
    JOHN AND JANE DOES 1 THROUGH 10
:
                        Defendants.
-----------------------------------------------------------------x

## RESPONDING TO MORGAN STANLEY MOTION

**The Debtor-Plaintiff Van. E. Johnson through his counsel, KaramvirDahiya of Dahiya Law Offices LLC, submit the following against the defendant Morgan Stanley motion for dismissal of the case:**

**Debtors claims are timely**

    There is no reason to hold that debtor's claims are untimely. Technical cut-off date is not the law that determines the statute of limitation when cause of actions are pleaded under Fair Housing Act (FHA) and Equal Credit Opportunity Act (ECOA). The federal discovery rule, equitable tolling, and the continuing violations doctrine all render Plaintiffs' claims timely. Also, the applicability of these doctrines depends upon factual allegations set out in the complaint, and it would be premature to dispose of Plaintiff's claims at this early stage of litigation, before

discovery and appropriate findings of fact. *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999).

**Discovery Rule supports Debtor's claims**

Under the discovery rule, the statute of limitations begins to run as of the date plaintiff discovers or should have discovered that he has been injured by the defendant's conduct. *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 544 (2d Cir. 1999).This is a rule of federal common law, "read into statutes of limitations . . . in the absence of a contrary directive from Congress."*Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990).

As this District Court has stated, "[c]laims under the FHA . . . are subject to the discovery rule and thus accrue when a plaintiff knows or has reason to know of the injury that serves as the basis for the action." *Clement v. United Homes, LLC*, 2012 WL 6720701, at 8 (E.D.N.Y. Dec. 27, 2012). See also *Jones*, 2002 WL 88431 at 5 (applying discovery rule to ECOA claim); *Estate of Henderson v. MeritageMortg. Corp.*, 293F. Supp. 2d 830 (N.D. Ill. 2003) (applying discovery rule to FHA and ECOA claims). Also, *Thompson v. Metro.Life Ins. Co.*, 149 F. Supp. 2d 38, 48 (S.D.N.Y. 2001) (Baer, J.) (where plaintiff would reasonably have had difficulty discerning the fact or cause of injury at the time it was inflicted, the so-called 'diligence-discovery rule of accrual' applies." )

**Debtor's claims are subject to Equitable Tolling**

Equitable tolling allows courts to "toll the statute of limitations until such a time that the court determines would have been fair for the statute of limitations to begin running on the plaintiff's claims." *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006). Its application is appropriate when "it would have been impossible for a reasonably prudent person to learn" that discrimination had occurred. *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 24 (2d Cir. 1985). Numerous courts have held that equitable tolling applies to ECOA and FHA claims. *See, e.g., AMS Grp. LLC v. J.P. Morgan Chase Bank*, 371 F. App'x 149, 150 (2d Cir. 2010) ("[T]he limitations period governing an ECOA . . . claim may be equitably tolled under some circumstances."); *Council v. Better Homes Depot, Inc.*, 2006 WL 2376381 (E.D.N.Y. Aug. 16, 2006) (finding equitable tolling applied to preserve plaintiffs' ECOA and FHA claims). Recently, the Supreme Court reaffirmed the "'rebuttable presumption of equitable tolling applicable to suits against private defendants.'" *Sibelius v. Auburn Reg'l Med. Ctr.*, 2013 WL 215485, Slip. Op. at 13 (Jan. 22, 2013) (quoting *Irwin v. Dep't of VeteransAffairs*, 498 U.S. 89, 95-96 (1990)).

As noted by a New York Court, the critical inquiry in both equitable tolling and discovery ruleanalysis is determining the earliest date on which either 1) plaintiffs actually became aware oftheir claims; or 2) plaintiffs through due diligence could have become aware of their claims.*Thompson*, 149 F. Supp. 2d at 48, 53.

Debtor did not know, and could not have known about Morgan Stanley's policies caused a disparate impact on the African-American borrowers in New York before it became evident owing to different lawsuits, newspaper articles etc. that it is primarily the African American who

2

have been given subprime loans and that they are losing houses in foreclosures in numbers. Also shrouded in secrecy to the ordinary consumer - like debtor - was complexity of warehouse funding and securitization process. It is incredible how at a point, several entities are created and a loan is made to bundle and it is sold in the secondary market soon thereafter and all the parties, though working collectively as an enterprise claims immunity for not being the lender.

Even if debtor had known of both the existence of Morgan Stanley's alleged policies and the effect of those policies on the mortgage loans they obtained from Lend America, they could not have been—and were not—aware of the disparate impact that the policies created, which only becomes apparent upon analysis of aggregated data. *See Davidson v. Bd. of Governors*, 920 F.2d 441, 445 (7th Cir. 1990) (Posner, J.) (holding that statute of limitations period is tolled until disparate impact plaintiff has "enough evidence to determine whether the practice is unlawful," so long as "he could not obtain that evidence with due diligence"); *Phillips v. Better Homes Depot, Inc.*, 2003 WL 25867736, at *25 (E.D.N.Y. Nov. 12, 2003) ("There is a difference between being aware that you got a bad deal and being aware that you were discriminated against in a systematic fashion.").

Given the applicability of the discovery rule and the doctrine of equitable tolling, anyfurther questions are factual rather than legal and therefore inappropriate for decision on amotion to dismiss. *See Thompson*, 149 F. Supp. 2d at 49 (declining to resolve discovery rulequestion on summary judgment because issues of fact remained).

The movants rightly gauged that they are liable to the debtor's claim under "continuing violation" doctrine. Morgan, the movant, improperly restricts the scope of continuing violation theory, it is not alone that "both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy," it is also when Plaintiff debtor wasissued Combined-Risk Loan and each time an action was taken to enforce those discriminatorymortgage contracts as now in the context of a bankruptcy filing and claiming monies from the estate. *See Taylor*, 580 F. Supp. 2d at 1066 (finding, for FHA and ECOA claims,that "each mortgage statement that seeks inflated payments for the loan based upondiscriminatory terms is another violation visited upon Plaintiff"); *Lomboy v. SCME Mortg.Bankers*, 2009 WL 1457738, at 8 (N.D. Cal. May 26, 2009) ("[T]he claim is not barred byECOA's two-year statute of limitations, as Plaintiff alleges a violation not only at the time ofclosing (which is outside of the statute of limitations period), but every time she makes apayment that is inflated because of the alleged discrimination.") (citations omitted); *Jackson v.NovastarMortg., Inc.*, 645 F. Supp. 2d 636, 645 (W.D. Tenn. 2007) (denying motion to dismisswhere Plaintiff contends "that each new loan and each loan payment paid by an affected minorityborrower constitutes a continuing violation"). Because demands for payment and threats offoreclosure were made pursuant to those contracts during the two year period before the filing ofthis lawsuit, Plaintiff's claims are timely. Plaintiff debtor has asserted disparate impact claims.Compl.¶ 26.

As the Supreme Court recently held in a unanimous decision, however, disparate impactclaims raise different statute-of-limitation considerations. In *Lewis v. City of Chicago*, 130 S. Ct.

3

2191 (2010) (Scalia, J.), the Court rejected the proposition that "present effects of prior actions"could not be cognizable violations of Title VII in a disparate impact case. 130 S. Ct. at 2199. Ina discriminatory intent case, "the plaintiff must demonstrate deliberate discrimination within thelimitations period." *Id.* (citations omitted). But "[t]hat reasoning has no application when, ashere, the charge is disparate impact." *Id.* Accordingly, the Court held that the City of Chicagocould have violated Title VII not only when it administered to aspiring firefighters a writtenexamination alleged to have caused a disparate impact, but also on each subsequent date onwhich it hired firefighters based on the results of that examination. *Id.* at 2198. In so doing, the *Lewis* court specifically rejected the argument that, because "the exclusion of petitioners whenselecting classes of firefighters *followed inevitably* from the earlier decision" to hire onlyapplicants who had reached a certain cutoff score, "no new violations could have occurred"thereafter. *Id.* at 2198-99 (emphasis added). Although the initial decision might have violatedthe law, "it does not follow that no new violation occurred—and no new claims could arise-- when the City implemented that decision down the road." *Id.* at 2199.

The application of *Lewis* to Plaintiff's claims is clear. The Second Circuit interprets the FHA and the ECOA in tandem with Title VII.*See Hack*, 237 F.3d at 90; *Jones v. Ford Motor Credit Co.*, 2005 WL 743213, at *8 (S.D.N.Y. Mar. 31, 2005). Because Plaintiffs assertdisparate impact claims, a new violation occurs each time Plaintiffs feel the effect of an actionthat "follow[s] inevitably" from the origination of Plaintiffs' mortgages or that "implements" theterms of those mortgages. *See Lewis*, 130 S. Ct. at 2198-99. In a disparate impact suit, becausethe gravamen of the claim is the effect of the challenged policy, the operative question is whetherplaintiffs experienced that effect during the limitations period. *See Miller*, 571 F. Supp. 2d at
262 (applying continuing violations doctrine where "the disparate effects likewise continue in therelevant period"); *Davis v. Gen. Motors Acceptance Corp.*, 406 F. Supp. 2d 698, 706 (N.D. Miss.
2005) (recognizing as consistent with Supreme Court precedent that, in disparate impact suit,monthly payments inflated as a result of challenged policy constitute violations in limitationsperiod); *cf. Woodworth v. Bank of Am., N.A.*, 2011 WL 1540358, at *14 (D. Or. Mar. 23, 2011)
*report and recommendation adopted sub nom. Woodworth v. Bank of Am., N.A.*, 2011 WL 1542514 (D. Or. Apr. 21, 2011) (recognizing that *Lewis* requires different analysis of statute oflimitations question for FHA discriminatory treatment and disparate impact claims). Plaintiff's allegations that they have been subject to demands for payment and threats of foreclosure duringthe limitations period are therefore sufficient.

Morgan claims that they did not originate the loan, however the prospectus filed with the Securities Exchange Commission defies that. They were funding the local mortgage lenders like Lend America to churn out certain loans according to their instructions, which could be bundled and sold as securities. 12 C.F.R. § 202.2(1) (For ECOA). The loan enforcement does not have to stay with Morgan for the purposes of claims under FHA and ECOA, it is impact of those loans and a continuing demand by any third party based on the original terms would constitute a violation of said provisions. It is clear that the FHA applies to the activities of the secondary market players in the purchasing of the loans, debts, or securities; the pooling or packaging of

4

these instruments; and the marketing and sale of securities issued on the basis of the loans or debts. 24 C.F. R. §§100.115(b), 100.125. See *In re. First Alliance Mortgage Co.*, 471 F.3d 977 (9th Cir. 2006) (upholding liability, looking beyond the fraudulent subprime mortgage originator to hold liable, under California law, the investment bank that served as lender and underwriter for the originator and closely monitored its business). Further the extent of Morgan role or control shall only further be clarified upon discovery. Also see Reg.B, 12 C.F.R. § 202.2(1). The commentary here clarifies that the definition of creditor includes an assignee or a potential purchaser of the obligation who influences the credit decision by indivating whether or not it will purchase the loan if the transaction is consummate. Offical Staff Commentary, 12 C.F.R. § 202.2(1).

"'The Supreme Court has repeatedly directed the courts to give a "generous construction" to the Fair Housing Act.'" *Hirschfeld v. Metlife Bank, N.A.*, 2012 WL 3240669, at 5 (E.D.N.Y. July 31, 2012) (quoting *Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 87 (2d Cir. 2000), *abrogated on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). Amongother things, the statute makes it unlawful for any "entity whose business includes engaging inresidential real estate-related transactions to discriminate against any person in making availablesuch a transaction, or in the terms or conditions of such a transaction, because of race." 42U.S.C. § 3605(a). A residential real estate-related transaction is defined to include, *inter alia*, the"purchasing of loans or providing other financial assistance . . . secured by residential realestate." 42 U.S.C. § 3605(b).

The text of § 3605 plainly prohibits discrimination by entities purchasing loans in thesecondary mortgage market. Its implementing regulations amplify this interpretation, specifying
that "unlawful conduct under this section includes, *but is not limited to*:

> (1) Purchasing loans or other debts or securities which relate to, or which are secured by dwellings in certain communities or neighborhoods but not in others because of the race . . . of persons in such neighborhoods or communities.

> (2) Pooling or packaging loans or other debts or securities which relate to, or whichare secured by, dwellings differently because of race. . . ."

24 C.F.R. § 100.125 (emphasis added). The provision's legislative history also states that, whenthe FHA was amended in 1988, "the provisions of the Act [were] extend[ed] to the secondarymortgage market." H.R. Rep. No. 711, 100th Cong., 2d Session 1988, at 30, *reprinted in* 1988
U.S.C.C.A.N. 2173, 2191.

Defendant's argument simply ignores the Complaint's core claim: Morgan Stanley'sfacially neutral policy of orchestrating the sale of Combined-Risk Loans for securitizationresulted in a disparate impact based on race, thereby violating § 3605.*See Tsombanidis v. W.*

5

*Haven Fire Dept.*, 352 F.3d 565, 574 (2d Cir. 2003) ("Disparate impact analysis focuses onfacially neutral policies or practices that may have a discriminatory effect."). Courts havespecifically found that disparate impact claims are cognizable under § 3605. *See Rodriguez v. Bear Stearns Cos., Inc.*, 2009 WL 995865, at 7 (D. Conn. Apr. 14, 2009); *Barkley v. Olympia Mortg. Co.*, 2007 WL 2437810, at *13 (E.D.N.Y. Aug. 22, 2007). Further, the safe havenprovision in the HUD regulations implementing § 3605 unequivocally confirms that disparateimpact liability applies to entities purchasing loans in the secondary mortgage market: theregulation provides that institutions may consider, "in the purchasing of loans, [ ] factors justifiedby business necessity . . . relating to a transaction's financial security or to protection againstdefault or reduction of the value of the security." 24 C.F.R. § 100.125(c). Of course, if entitiescould only violate § 3605 by intentionally discriminating, it would not be necessary to insulate
them from liability for considering "factors justified by business necessity."

None of the cases cited by Morgan call into doubt § 3605's application here. Rather, they stand for the unexceptional premise that the assignee of a loan will not be held liable merelyby virtue of discrimination committed by the loan's originator. *See Stewart v. Bank of N.Y. Mellon*, 2011 WL 3267321, at *4 (D. Ariz. July 29, 2011) ("Plaintiff's pleadings provide no sufficient allegation that Defendant [as assignee] did engage in [discriminatory] conduct or what that 'wrongful conduct' was."); *Levey v. CitiMortgage, Inc.*, 2009 WL 2475222, at *2 (N.D. Ill. Aug. 10, 2009) ("All of [plaintiff's] allegations of wrongdoing are directed at [co-defendants], not against CitiMortgage."); *Wright v. Castle Point Mortg.*, 2006 WL 1468678 (D.N.J. May 22, 2006) (dismissing FHA claim where assignee-defendant had no connection to any of the alleged discriminatory acts). None of those cases insulate a defendant from liability where its own policies and practices for purchasing mortgage loans resulted in a discriminatory effect on borrowers like the debtor.

**ECOA claim is viable here.**

The discrimination alleged in the Complaint violates the ECOA. Under the ECOA, it is unlawful for "any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race." 15 U.S.C. § 1691(a). The statute defines "creditor" to include, *inter alia*, "any assignee of an original creditor who participates in the decision to extend, renew, or continue credit." *Id.* §1691a(e). Morgan Stanley's extensive participation in Lend America's lending practices render it a "creditor" under the ECOA and its implementingregulations, which extend to any entity that, "in the ordinary course of business, regularlyparticipates in a credit decision, including setting the terms of credit." 12 C.F.R. § 202.2(*l*). See Compl.¶ 8 (mentioning five reasons why Morgan is a participant and a creditor) Morgan fails to explain why such extensive participation would not place it within the ECOA's ambit. Instead, they argue that the statute imposes an anemic definition of "creditor," one that is inconsistent with the implementing regulation; Regulation B. Morgan Stanley's truncated definition of "creditor" finds no support in the case law."Courts have found entities to be creditors for purposes of ECOA even when they did not directly review credit applications, when they regularly participated in determining binding policies for extending credit to customers."

*Coleman v. Gen. Motors Acceptance Corp.*, 220 F.R.D. 64, 76 n.9 (M.D. Tenn. 2004). The *Coleman* court found that a General Motors-affiliated auto finance company was an ECOA "creditor" where it influenced auto finance transactions by "providing loan documents to dealers," setting "buy rates and finance charge markups," and providing training in how to satisfy secondary purchase requirements. *Id.* at 76; *see also Wise v. Union Acceptance Corp.*, 2002 WL 31730920, at *3 (S.D. Ind. Nov. 19, 2002); *cf. Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 980 (7th Cir. 2004) (recognizing "a continuum of participation in a credit decision . . . [a]t some point along the continuum, a party becomes a creditor") (quotation marks and citation omitted). Finally, Morgan's argument is premature. Whether an entity regularly participates in the decision to extend credit "is obviously a factual matter, not usually appropriate for resolution in a motion to dismiss." *S & G Petroleum Co. v. Brice Capital Corp.*, 1993 WL 22182, at *2 (E.D. Pa. Jan. 26, 1993).

**FHA and ECOA claims are well pleaded**

Morgan feels that factual assertions are not backed up by evidence and that same evidence has not been produced in the pleadings. To fight about the factual issues is not a ground here for dismissal. "In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Gusler v. City of Long Beach*, 823 F. Supp. 2d 98, 121 (E.D.N.Y. 2011).

Plaintiffs have more than adequately pled their claims for disparate impact discrimination. To survive a motion to dismiss, a complaint alleging disparate impact under the FHA or ECOA need only identify a facially neutral practice that causes an adverse impact on a protected group. *See Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 88 (2d Cir. 2000). Plaintiffs need not plead a prima facie case of discrimination. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) ("The prima facie case . . . is an evidentiary standard, not a pleadingrequirement."). Instead, the complaint need only allege facts rendering the prima facie caseplausible. *See Jenkins v. N.Y.C. Transit Auth.*, 646 F. Supp. 2d 464, 469 (S.D.N.Y. 2009).

The allegations in the Complaint meet that standard. Plaintiffs identify Morgan Stanley'sfacially neutral policy of orchestrating the sale of Combined-Risk Loans for securitization as the source of the discriminatory effects they suffered. The complaint identified the acts. Compl. §8.
Defendants' arguments to the contrary mischaracterize the pleading requirements, raise premature questions of fact that will require expert analysis of not-yet-produced data, and ignorethe specific allegations in the Complaint.

The statistic provided is just a sample of what Lend America provided and that it targeted the minorities for subprime loans. *See Hargraves v. Capital CityMortg. Corp.*, 140 F. Supp. 2d 7, 29 n.9 (D.D.C. 2000) (holding a disparate impact analysis based on a geographic subset of lender's activity "sufficient to survive defendants' motion for summary judgment").*Taylor v. Accredited Home Lenders, Inc.*, 580 F. Supp. 2d 1062, 1069 (S.D. Cal. 2008) (denying motion to dismiss where plaintiffs relied on HMDA data to demonstrate disparity in high-cost loans); *Ramirez v. GreenPoint Mortg. Funding, Inc.*, 633 F.Supp. 2d 922, 928-29 (N.D. Cal. 2008)

7

(denying motion to dismiss where plaintiffs proffered, *inter alia*, HMDA data showing minorities more likely to receive high-cost loans).

**New York Banking Law Applies to Morgan NY Banking Law § 6-l(6)**

Morgan was clearly involved to engage in the business of making mortgage loans in this state as defined by N.Y. BNK. LAW § 590. Morgan was involved in funding of these housing loans through the small brokers or lenders.

The calculation of this loan about high cost by the Trust, and Morgan is flawed. They improperly deduct what could be deductible under ordinary circumstances when those expenses are not paid by the lender. If the lender is also financing the closing costs, that cost is included in the calculation for meeting the threshold. Both Morgan and the Trust counsel do not include thereal estate fees necessary to close the transaction. The lenders and its participant in the transactions clearly indirectly received compensation in the form of interest on the loan used to finance the real estate fees at the time of closing. of interest on the loan used to finance the real estate fees at the time of closing. *LaSalle Bank, N.A., II v. Shearon*, 23 Misc. 3d 959, 968, 881 N.Y.S.2d 599, 606 (Sup. Ct. 2009). Lender cannot deny that it received indirect benefit. If the lender had not financed the closing costs, then, these closing costs would not have been included in the calculation.

**Morgan is liable**

It is the allegation in the underlying complaint that injuries are "fairly traceable" to the actions of Morgan and other defendants. The Supreme Court has rejected the notion that fair traceability is equivalent to "proximate cause" or that it requires that the "defendant's actions are the very last step in the chain of causation." *Bennett v. Spear*, 520 U.S. 154, 168-69 (1997). Rather, a plaintiff may have standing even when alleging that the defendant's conduct "indirectly caused" the injury, so long as "the defendant's actions *constrained or influenced* the decision of the final actor in the chain of causation." *Carver v. City of New York*, 621 F.3d 221, 226 (2d Cir. 2010) (emphasis added). Plaintiffs have alleged in very detailed terms that Morgan Stanley "constrained or influenced" lend America lending practices.

The complaint sufficiently pleads the facts to show that Van Johnson, the African-American debtor was discriminated or in other words, Morgan Stanley demand for combined-risk loans had an adverse and disparate impact on the debtor.

In fact it is generally accepted that "a complaint sufficiently raises a claim even if it points to no legal theory or even if it points to the wrong legal theory as a basis for that claim, as long as relief is possible under any set of facts that could be established consistent with the allegation." *Tolle v. Carrol Touch, Inc.*, 977 F. 2d 1129, 1134 ( 7th Cir. 1992); see also *Morales-Vallellanes v. Potter*, 339 F.3d 9, 14 (1st Cir. 2003); Simonton v. Runyono, 232 F. 3d 33, 36-37 (2nd Cir. 2000). Thus for example, ***"[b]because racial discrimination in employment is a 'claim upon which relief can be granted," . . . 'I was turned down for a job because of my race' is all a complaint has to say."*** Bennett v. Schmidt, 153 F. 3d at 518.

8

With Morgan funding Lend America to churn out expensive discriminatory loans, now it cannot claim that it had nothing to do with Lend America loans especially when the following is alleged:

> Morgan Stanley dictated the types of loans that Lend America issued, requiring multiple high risk features as a condition for purchase of such loans. These combined risks put these minorities borrowers on path towards foreclosures and loss of properties. High DTI ratios indicate that the loan is larger than the borrower can afford. *Second*, Morgan Stanley regularly purchased and securitized mortgage loans from Lend America where the loan-to-value ratio exceeded 100%. High loan-to-value ratios, which compare the amount of the loan to the value of the home, are loans where the borrower faces a greater risk of delinquency or foreclosure. *Third*, Morgan Stanley required Lend America to issue loans with adjustable rates and prepayment penalties. Morgan Stanley also purchased and securitized large numbers of Lend America mortgage loans with balloon payment features, exacerbating a borrower's financial risk. *Fourth*, Morgan Stanley provided necessary funding-in the form of warehouse lending, precommittments to purchase loans, and funding for loan closings-to Lend America that allowed it to remain in business until it was stopped by enforcement authorities from conducting business. *Fifth,* Morgan Stanley purchased loans that deviated substantially from basic underwriting standards, going so far as to encourage lending tactics that increased the levels of risk associated with individual loans.

Compl. ¶ 8

When defendants work as an enterprise, they cannot rule out liability. One is agent of the other. *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961 (6th Cir. 1998) (principal can be liable for agent's torts on three theories: express or implicit authorization; respondeat superior when agent acts for benefit of principal and with scope of employment; and apparent authority regardless of whether agent acted for own purposes or principal's); *Pulphus v Sullivan*, 2003 WL 1964333 (ND Ill Apr 28, 2003)(assignee can be liable for actions of agent's agents: title company is an agent of lender for RICO purposes on motion to dismiss). Morgan participated in this joint venture of extending high cost loans resulting in disparate impact. *Wilkinson v. Smith*, 639 P.2d 768 ( Wash. Ct. App. 1982). The law governing partnership applies to joint ventures. 46 Am. Jur.2d Joint Ventures § 2 (1969). All the requirements of joint ventureshipare satisfied here. See Compl. ¶ 8. It is clear there was contribution of money to Lend America by Morgan, they actively participated in the loan origination scheme and they had their own shares of profits. It is also clear here that the fruits of fraud in a mortgage transaction could be the mortgage loan itself, a wrongly charged fee, or potentially a portion of the income the holder receives from the loan.  It cannot be denied that Morgan had benefits from bundling those loans which were originated to its directed scheme.  See also *Short v. Wells Fargo Bank Minnesota* 401 F. Supp. 2d 549 ( S.D.W. Va. 2005); *P.F.G. Indus. Inc. v. Tel-Glass, INc.,* 373 N.Y.S. 2d 141, 143 ( App.

Div. 19750 ("The mere failure of plaintiffs to allege an agreement to share losses as well as profits is not fatal, if other elements essential to a joint venture are present.")

Morgan makes a futile attempt to procrustean civil rights claims under section 1981 and 1982 to "intentional discrimination," and thus rejects these statute relations to disparate impact theory. "The line between discriminatory purpose and discriminatory impact is not nearly as bright, and perhaps not quite as critical, as the reader of the Court's opinion might assume." *Washington v. Davis*, 426 U.S. 229, 254 (1976) (Stevens, J., concurring). It is clear that the evidence submitted to prove one kind of claim invariably can be used to support the other. In *Village of Arlington Heights v. Metropolitan Housing Authority*, 429 U.S. 252 (1977)though the disparate impact of a zoning decision on African-Americans was held to be insufficient to establish discriminatory intent in the absence of further evidence showing that race entered into the decision making process. The Court acknowledged, however, that evidence of adverse impact "may provide an important starting point" and may be entirely sufficient if "a clear pattern, unexplainable on grounds other than race, emerges from the effect of the state action." Id. at 266. In *International Brotherhood of Teamsters v. United States*, 31 U.S. 324 (1977) the Court upheld a finding of intentional discrimination in hiring and promoting truck drivers to better-paid positions as "over the road" drivers. The plaintiff's evidence was overwhelming based on the "inexorable zero" of almost no representation at all of minority drivers in "over the road" jobs. This overwhelming statistical disparity was augmented by anecdotal evidence of discrimination that, in the Court's words, "brought the cold numbers convincingly to life.Id at 342 n. 23, 375-76. See also Hazelwood School District v. United States 433 U.S. 299 (1977) (Court's analysis of the statistic evidence applies equally to claims of disparate impact). The only difference is of additional evidence and same can only be highlighted by further discovery. Direct proof of discriminatory motive is often unavailable. In the absence of such evidence, claims of intentional discrimination may be analyzed using the burden shifting analytic framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

**Causal Connection is prematurely raised**

Defendants argue that Morgan Stanley cannot legally have caused the disparate impactalleged here because Lend America originated the loan and that there is no connection of the defendant to the discriminatory impact. That argumentmisstates the causation requirement in a disparate impact case. At the pleading stage, Plaintiffsneed not make "allegations specifically supporting the causal connection" between thechallenged policy and the adverse impact. *Reyes v. Fairfield Properties*, 661 F. Supp. 2d 249,266 (E.D.N.Y. 2009). Further, a disparate impact claim properly focuses on the underlyingpolicy causing the eventual disparity, even if that policy is channeled through intermediaries.

Thus, "[b]anks should not target minority neighborhoods for loans that discriminate nor make loans to minorities on terms that are worse than those offered to whites with similar credit characteristics," *See McReynolds v. Merrill Lynch*, 672 F.3d 482, 489 (7th Cir. 2012) (Posner, J.)

10

(a disparateimpact claim arises where a practice can be "challenged as enabling . . . racial discrimination").

If the court feels, that the complaint is inadequate, the plaintiff be permitted to amend the complaint.

Date: New York New York
February 14, 2014

_____
KaramvirDahiya, for Debtor Plaintff