UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

              VAN E. JOHNSON,

                      Debtor.

-----------------------------------------------------------------x
VAN E. JOHNSON

                    Plaintiff,

     -against-

WELLS FARGO BANK, N.A. d/b/a AMERICA'S
SERVICING COMPANY, BANK OF AMERICA,
NATIONAL ASSOCIATION as Trustee for
MORGAN STANLEY TRUST 2006-6AR,
MORGAN STANLEY CAPITAL 1 INC., A
DELAWARE CORPORATION, as Depositor,
MORGAN STANLEY & CO. as Underwriter,
MORGAN STANLEY MORTGAGE CAPITAL
INC., as Seller, IDEAL MORTGAGE BANKERS
d/b/a LEND AMERICA, KR MANAGEMENT
LLC & MALCO REAL ESTATE INC., and JOHN
AND JANE DOES 1 THROUGH 10,

                    Defendants.

-----------------------------------------------------------------x

Chapter 13
Case No. 09-49420

Adv. Pro. No. 13-01445

### MEMORANDUM DECISION AND PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTIONS TO DISMISS THE AMENDED COMPLAINT

*Appearances:*

Karamvir Dahiya, Esq.
Dahiya Law Offices, LLC
75 Maiden Lane
Suite 506
New York, NY 10038
      *Attorneys for Van E. Johnson*

Brian J. Grieco, Esq.
Jonathan E. Samon, Esq.
Hogan Lovells US LLP
875 Third Avenue
New York, NY 10022
      *Attorneys for Wells Fargo Bank,*
      *N.A. d/b/a America's Servicing*
      *Company and Bank of America,*
      *National Association as Trustee for*
      *Morgan Stanley Trust 2006-6AR*

Mary Gail Gearns, Esq.
David M Marcus, Esq.
Colleen J O'Loughlin, Esq.
Bingham McCutchen LLP
399 Park Avenue
New York, NY 10022
      *Attorneys for Morgan Stanley*
      *Capital 1 Inc., a Delaware*
      *Corporation, as Depositor, Morgan*
      *Stanley & Co. as Underwriter, and*
      *Morgan Stanley Mortgage Capital*
      *Inc. as Seller*

HONORABLE ELIZABETH S. STONG
UNITED STATES BANKRUPTCY JUDGE

## Introduction

This adversary proceeding was commenced by Van E. Johnson, the debtor in this Chapter

13 case, against defendants Wells Fargo Bank, N.A. d/b/a America's Servicing Company

("Wells Fargo"); Bank of America, National Association as Trustee for Morgan Stanley Trust

2006-6AR ("Bank of America"); Morgan Stanley Capital I Inc., Morgan Stanley & Co. LLC,

and Morgan Stanley Mortgage Capital Inc. (together, "Morgan Stanley"); Ideal Mortgage

Bankers d/b/a Lend America ("Lend America"); KR Management and Malco Real Estate Inc.

("KR Management"); and John and Jane Does 1 through 10 (together, the "Defendants").

Johnson's claims arise out of a loan and mortgage that he entered into in connection with

purchasing his home in January 2006.  He alleges that Lend America, the originator of the loan,

made misrepresentations during the loan originating process as part of a larger scheme designed

to extend credit on unfavorable terms to African-American borrowers.  In addition to Lend

America, Johnson names as defendants Wells Fargo and Bank of America, the mortgage

servicing agents and creditors in his bankruptcy case; Morgan Stanley, which allegedly enabled

Lend America's discriminatory credit policies by purchasing and funding loans originated by

Lend America in the secondary mortgage market; and KR Management, the mortgage broker.

Johnson attempts to assert several claims, and seeks relief in several forms.  He alleges

violations of Section 6-*l* of New York State's Banking Law, which prohibits certain abusive loan

practices.  He also seeks relief under the federal Fair Housing Act, 42 U.S.C. §§ 3601-19

("FHA"); the Equal Credit Opportunity Act, 15 U.S.C. § 1691 ("ECOA"); and the Civil Rights

Act, 42 U.S.C. §§ 1981 and 1982.  Johnson seeks a declaratory judgment that the Defendants

violated Section 6-*l* of the New York Banking Law, a judgment that his home loan is void under

New York Banking Law, a declaratory judgment that the Defendants violated the FHA, the ECOA, and the Civil Rights Act, return of all the payments he made under his home loan, rescission of the home loan, avoidance of the lien on his residence, legal fees, actual and punitive damages, and restitution. He also seeks an order disallowing Wells Fargo's proof of claim.

Defendants Wells Fargo, Bank of America, and Morgan Stanley (together, the "Moving Defendants"), move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable here by Federal Rule of Bankruptcy Procedure 7012, on several grounds. They argue that Johnson's causes of action are barred by the applicable statutes of limitations and that Johnson does not set forth factual allegations that support a plausible claim for relief. Wells Fargo and Bank of America also assert that Johnson's objection to the proof of claim is untimely.

## Procedural History

This adversary proceeding, two prior adversary proceedings, and Johnson's Chapter 13 bankruptcy case have followed a long path in this Court. Certain of those proceedings provide some context for the issues presented by these motions to dismiss, as follows.

On October 27, 2009, Johnson commenced a case under Chapter 13 of the Bankruptcy Code, and on November 25, 2009, Johnson filed his first Chapter 13 plan. On December 30, 2009, America's Servicing Company filed a proof of claim on behalf of Bank of America for $288,794.92, and on January 5, 2010, Bank of America objected to confirmation of Johnson's Chapter 13 plan.

On June 13, 2010, Johnson commenced an adversary proceeding (the "First Adversary Proceeding") (Case No. 10-01138) against ten defendants, including America's Servicing Company, Bank of America, Lend America, KR Management, and others, alleging violations of

the FHA, the ECOA, the Truth in Lending Act, the Civil Rights Act, and New York State's

General Business Laws, among other causes of action.

On January 6, 2011, Johnson filed his fourth Chapter 13 plan, and on January 19, 2011,

Bank of America withdrew its objection to confirmation. Soon thereafter, on February 16, 2011,

Johnson filed an objection to Bank of America's proof of claim. On March 17, 2011, the Court

directed Johnson and Bank of America, on consent, to participate in the Court's loss mitigation

program, to see if the parties could agree on the terms of a consensual loan modification. No

agreement was reached, and on October 28, 2011, the loss mitigation period was terminated. On

November 1, 2011, in connection with resolving Johnson's objection to Bank of America's proof

of claim, the Court directed Bank of America, again on consent, to file an amended proof of

claim.

On August 13, 2012, this Court dismissed the First Adversary Proceeding without

prejudice in response to Johnson's letter request that it be dismissed and this Court's order to

show cause why the case should not be dismissed. On August 29, 2012, Johnson filed his ninth

Chapter 13 plan and on September 18, 2012, without objection, this Court confirmed that

Chapter 13 plan.

But confirmation of Johnson's Chapter 13 plan did not bring closure to his dispute with

the Defendants. Nine days later, on September 27, 2012, Johnson filed another adversary

proceeding (the "Second Adversary Proceeding") (Case No. 12-01282) against America's

Servicing Company, Bank of America, Lend America, Ideal Mortgage Bankers, and John and

Jane Does 1 through 10, alleging violations of Section 6-*l* of the New York Banking Law and

objecting to the proof of claim. On March 5, 2013, this Court dismissed the Second Adversary

Proceeding, again on consent and without prejudice, and with leave to replead an amended

complaint by March 19, 2013.  No amended complaint was filed, and the Second Adversary

Proceeding was closed on July 11, 2013.

More than five months after the deadline to replead had passed, on August 27, 2013,

Johnson commenced this Adversary Proceeding and on October 4, 2013, Johnson filed an

amended complaint.  That complaint is the operative complaint for the purposes of these motions

to dismiss.

On November 11, 2013, Wells Fargo filed an amended proof of claim for $352,447.77

and attached an affidavit in support of Wells Fargo's standing, as holder of the note and

mortgage, to file a proof of claim.

On November 6, 2013, Wells Fargo and Bank of America jointly filed a motion to

dismiss, and on January 15, 2014, Morgan Stanley filed a motion to dismiss.  To date, no other

defendants have responded to the Amended Complaint.

### Background

Johnson alleges that sometime in 2006, he contacted KR Management about obtaining a

home loan.  He also alleges that he was able to make only a small down payment and had limited

income, but was nevertheless approved.  Johnson took out a loan originated by Lend America to

purchase a home at 128 Howard Avenue in Brooklyn.  The Amended Complaint states that

instead of working within Johnson's financial constraints, Lend America artificially inflated the

purchase price of the home and encouraged Johnson to take out a second loan and mortgage

secured by the property.  In this way, Johnson avers, the second mortgage proceeds could be

used as a down payment on the first mortgage, so that the first mortgage would meet federal

housing guidelines and be marketable in the secondary mortgage market.  Johnson alleges that

Lend America perpetrated a similar scheme on many of its borrowers, and that a disproportionate

number of mortgage loans originated by Lend America were made to minority borrowers,

especially African-Americans.

Johnson alleges that Morgan Stanley is liable because it authorized Lend America to

accept mortgage applications on its behalf, quote financing rates, inform credit applicants of

Morgan Stanley's financing options and originate loans according to Morgan Stanley's credit

policies.  Johnson alleges that Wells Fargo and Bank of America are liable as assignees of the

loan and because Lend America originated loans in reliance on their credit policies.

### Jurisdiction and Authority To Enter a Final Judgment

"Congress has divided bankruptcy proceedings into three categories:  those that 'aris[e]

under title 11'; those that 'aris[e] in' a Title 11 case; and those that are 'related to a case under

title 11.'"  *Stern v. Marshall*, 131 S. Ct. 2594, 2603 (2011) (citing 28 U.S.C. § 157(a))

(alterations in original).

The district courts have original, but not exclusive, jurisdiction over all cases "arising

under" the Bankruptcy Code or "arising in or related to" cases under the Bankruptcy Code.  28

U.S.C. § 1334(b).  "[A] proceeding is related to a case under the Bankruptcy Code 'if the

outcome of the litigation might have any conceivable effect on the bankruptcy estate, or has any

significant connection with the bankrupt estate.'"  *In re Allou Distributors Inc.*, 2012 WL

6012149, at *6 (Bankr. E.D.N.Y. Dec. 3, 2012) (quoting *Lead I JV, LP v. North Fork Bank*, 401

B.R. 571, 581 (E.D.N.Y.2009)).

This Court may hear each of Johnson's claims as a "related to" matter.  Johnson seeks,

among other things, to disallow the proof of claim filed by Wells Fargo, rescind his home loan and mortgage, and collect damages.  The outcome of Johnson's objection to Wells Fargo's claim will have an effect on the bankruptcy estate because if Johnson succeeds, then Wells Fargo's claim may be disallowed.  Likewise, if Johnson succeeds in his claims under the New York Banking Law, the ECOA, the FHA, and the Civil Rights Act, then his bankruptcy estate may collect damages.[1]  For these reasons, this Court has jurisdiction to consider these claims under 28 U.S.C. § 1334(b).

While it is clear that the bankruptcy court has jurisdiction over these claims, that is not the end of the inquiry.  This Court is constrained by both statutory and constitutional limits to its authority to enter a final judgment.  Judiciary Code Section 157 "permits a bankruptcy court to adjudicate a claim to final judgment in two circumstances – in core proceedings, see § 157(b), and in non-core proceedings 'with the consent of all the parties,' § 157(c)(2)."  *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2174 (2014).  In addition, in order to enter a final judgment in a core proceeding, a bankruptcy court must have constitutional authority to do so pursuant to the Supreme Court's decisions in *Northern Pipeline Const. Co. v. Marathon Pipeline Co.*, 458 U.S. 50 (1982), *Stern*, and *Executive Benefits*.  As the Supreme Court observed, "Congress may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process."  *Stern*, 131

---

[1]  Johnson, as a Chapter 13 debtor, shares standing with the Chapter 13 Trustee to pursue these claims.  *See Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513, 515-16 (2d Cir. 1998) (observing that "although some courts of appeals have held that Chapter 7 debtors have no standing to pursue causes of actions that belong to the estate, . . . we reach the contrary holding with respect to Chapter 13 debtors who pursue such cause of action").

S. Ct. at 2618.  For non-core proceedings and for core proceedings for which the bankruptcy court does not have constitutional authority to enter a final judgment, the bankruptcy court may "'hear [the] proceeding,' and then 'submit proposed findings of fact and conclusions of law to the district court.'" *Executive Benefits*, 134 S. Ct. at 2172 (quoting 28 U.S.C. § 157(c)(1)) (alterations in original).

Consistent with these determinations, the standing order of reference in this District provides that if a bankruptcy judge determines that the bankruptcy court cannot enter a final order or judgment consistent with Article III of the United States Constitution, the bankruptcy court "shall hear the proceeding and submit proposed findings of fact and conclusions of law to the district court . . . ."  December 5, 2012 Standing Order, *In the Matter of the Referral of Matters to the Bankruptcy Judges* issued in the Eastern District of New York.  The Standing Order further provides:

> The district court may treat an order or judgment of the bankruptcy court as proposed findings of fact and conclusions of law in the event that the district court concludes that a bankruptcy judge could not enter that order or judgment consistent with Article III of the United States Constitution . . . .

Johnson's claims for damages under the New York Banking Law, the FHA, the ECOA, and the Civil Rights Act do not arise under the Bankruptcy Code and could be asserted independently of Johnson's bankruptcy case.  Accordingly, these are non-core matters, and for these matters, the bankruptcy court may propose findings of fact and conclusions of law to the district court.  *See* 28 U.S.C. § 157(c)(1).

But Johnson's objection to Wells Fargo's proof of claim is a core matter.  28 U.S.C. § 157(b)(2)(B); *see In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1390 (2d Cir. 1990).  And it is a core matter as to which this Court has constitutional authority to enter a final

judgment, because the objection "stems from the bankruptcy itself." *Stern*, 131 S. Ct. at 2618.

Accordingly, this decision shall serve as proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c) as to the Moving Defendants' motions to dismiss Johnson's claims under the New York Banking Law, the FHA, the ECOA, and the Civil Rights Act.  And this decision and the accompanying order shall serve as a final determination of Wells Fargo's and Bank of America's motion to dismiss on timeliness grounds Johnson's objection to the proof of claim.

## Discussion

The issues raised by these motions call for the Court to consider the standard on a motion to dismiss under the pleading requirements established by Federal Rules of Civil Procedure 8(a) and 12(b)(6), made applicable here by Bankruptcy Rules 7008 and 7012, and using that standard, to determine whether the Moving Defendants have shown that Johnson fails to state a claim upon which relief may be granted under New York Banking Law, the FHA, the ECOA, and the Civil Rights Act.  This, in turn, requires the Court to consider the threshold requirements as well as the elements of those claims.  These motions also require the Court to consider the timeliness of Johnson's objection to Wells Fargo's proof of claim, and whether, based on all the facts and circumstances, it was filed too late to be considered.  These matters are addressed in turn below.

### *Pleading Requirements Under Federal Rules of Civil Procedure 8(a) and 12(b)(6)*

Johnson's claims under the New York Banking Law, the FHA, the ECOA, and the Civil Rights Act must be measured using the tools of Federal Rules of Civil Procedure 8(a) and 12(b)(6), made applicable here by Bankruptcy Rules 7008 and 7012.  These rules set forth the standards applicable to stating a claim for relief.

8

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court set forth a two-step approach: first, a court should "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. And second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

Federal Rule of Civil Procedure 12(b)(6) permits a party to seek dismissal of a claim at the pleading stage if it does not state a claim upon which relief may be granted. When considering a motion to dismiss under Rule 12(b)(6), the court should accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *DiFolco v. MSNBC Cable, LLC*, 622 F.3d 104, 110-11 (2d Cir. 2010); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). Taken together, these rules give effect to the common-sense notion that on the one hand, a plaintiff with a plausible claim should have a day in court – but on the other, a claim that cannot pass the plausibility threshold at the pleading stage should be dismissed.

### *Johnson's Causes of Action*

Johnson brings his claims under New York Banking Law and three federal statutes, and each addresses an important remedial policy or concern. Section 6-*l* of the New York Banking Law regulates a specific kind of home loan designated as "high-cost" by the statute. The FHA prohibits invidious discrimination by businesses engaged in residential real estate transactions. The ECOA prohibits invidious discrimination by lenders with respect to any aspect of a credit

transaction.  And the Civil Rights Act prohibits invidious discrimination in many contexts, including by businesses engaged in commercial activity.

<u>*Whether the Amended Complaint States a Claim Under New York Banking Law*</u>

New York Banking Law Section 6-*l* was enacted to "protect individuals obtaining home loans in the sub-prime lending market."  New York Bill Jacket, 2002 Assem. B. 11856, Ch. 626. The statute limits and prohibits certain practices regarding "high-cost home loans."  Whether a home loan qualifies as "high-cost" depends on whether it meets specific thresholds established by the statute.  The statute permits a private right of action by borrowers against all persons who have violated the law, including assignees of the home loan, and sets forth specific remedies available to borrowers.  These include actual, consequential and incidental damages; statutory damages including a refund of all interest, closing costs, and points and fees charged on the loan; attorneys fees; injunctive relief; and rescission.  And where an intentional violation is shown, the statute allows for the entry of judgment rendering the home loan agreement void and recovery of any payments made under the agreement.

Johnson alleges that his home loan is a "high-cost" home loan under the thresholds established by New York Banking Law Section 6-*l*, and that Lend America and KR Management violated that law by failing to comply with Section 6-*l*'s provisions that mandate certain disclosures and due diligence.  Johnson alleges that "the other defendants," including Wells Fargo, Bank of America, and Morgan Stanley, are also liable under Section 6-*l*(13) "as assignee[s] of the loan."  Amended Cplt. ¶ 49.

<u>Whether Johnson's New York Banking Law Claims Are Barred by the Statute of Limitations</u>

New York Banking Law Section 6-*l*(6) provides that "a private action against the lender

10

or mortgage broker pursuant to this section must be commenced within six years of origination

of the high-cost home loan." Section 6-*l*(11) provides:

> Upon a judicial finding that a high-cost home loan violates any provision of this
> section, whether such violation is raised as an affirmative claim or as a defense,
> the loan transaction may be rescinded.  Such remedy of rescission shall be
> available as a defense without time limitation.

And Section 6-*l*(13) provides:

> In any action by an assignee to enforce a loan against a borrower in default more
> than sixty days or in foreclosure, a borrower may assert any claims in recoupment
> and defenses to payment under the provisions of this section and with respect to
> the loan, without time limitations, that the borrower could assert against the
> original lender of the loan.

N.Y. Banking Law § 6-*l* (McKinney 2014).

Section 6-*l* was enacted by the New York State Legislature in response to a significant

increase in mortgage foreclosures, as part of a series of laws known as the Subprime Residential

Loan and Foreclosure Laws.  *See* Hon. Mark C. Dillon, *The Newly-Enacted CPLR 3408 for*

*Easing the Mortgage Foreclosure Crisis: Very Good Steps, but Not Legislatively Perfect*, 30

Pace L. Rev. 855, 856 (2010).

It is apparent from both the language and the structure of Section 6-*l* that the six-year

limitations period applies except if a home loan borrower is subject to legal action, including an

action to enforce a loan or a foreclosure action.  In that circumstance, Section 6-*l* may be

invoked as a defense in that action, and the remedy of rescission for a violation of the statute is

"available as a defense without time limitation."  N.Y. Banking Law § 6-*l*(11) (McKinney 2014).

This interpretation is confirmed when Section 6-*l* is read together with New York Real Property

Actions and Proceedings Law § 1302(2), which was also adopted as part of the Subprime

Residential Loan and Foreclosure Laws.  That section states that "it shall be a defense to an

action to foreclose a mortgage for a high-cost home loan . . . that the terms of the home loan or the actions of the lender violate any provision of section six-l . . . of the banking law . . . ." N.Y. Real Prop. Acts. Law § 1302 (McKinney 2014).

The Moving Defendants argue that Johnson's claims under New York Banking Law Section 6-*l* are time-barred because claims under that section must be commenced within six years of the origination of the loan. They urge that the exceptions to the six-year statute of limitations under Sections 6-*l*(11) and 6-*l*(13) apply only when the lender has asserted an action to enforce a loan, and that here, a proof of claim is not such an action.

Johnson responds that while he entered into his home loan and mortgage in January 2006, his New York Banking Law claims are not time-barred because his claims are, in substance, defenses to Wells Fargo's proof of claim in this bankruptcy case, and under New York Banking Law Sections 6-*l*(11) and 6-*l*(13), the statute's six-year limitations period does not apply when a violation of the statute is invoked as a defense. For these reasons, Johnson urges, the Defendants may not invoke Section 6-*l*'s six-year limitations period as a defense to his claims, and his New York Banking Law claims are timely.

Here, Johnson filed this bankruptcy case and Wells Fargo filed a proof of claim as a creditor. Johnson commenced this adversary proceeding and objects to that proof of claim on grounds, among others, that his home loan and mortgage were issued in violation of New York Banking Law Section 6-*l*. He seeks relief including a declaration that his home loan and mortgage are void. That is, Johnson's Section 6-*l* claims seek affirmative relief. They are not the type of "defenses" contemplated by Sections 6-*l*(11) and 6-*l*(13).

Filing a proof of claim as a creditor in a bankruptcy case is plainly different than

initiating a foreclosure proceeding as a plaintiff.  And objecting to a proof of claim as a debtor in

a bankruptcy case is plainly different than responding to a foreclosure complaint as a defendant.

For purposes of Sections 6-*l*(11) and 6-*l*(13), then, Johnson's objection to Wells Fargo's proof of

claim is not a defense that would bring him within the exception to the six-year statute of

limitations set forth in Section 6-*l*(6).  As a result, the statute of limitations on a cause of action

with respect to this loan that originated in January 2006 expired in January 2012.  This action

was commenced in August 2013, and therefore, based on the allegations of the Amended

Complaint, it is time-barred.

For these reasons, and based on the entire record, the Moving Defendants have shown

that the Amended Complaint does not state a claim against them under New York Banking Law

Section 6-*l*, because Johnson does not adequately allege facts to show that these claims are not

time-barred.  Accordingly, the Moving Defendants' motions to dismiss these claims are granted.

<u>Whether the Amended Complaint Otherwise States a Claim Under New York Banking
Law</u>

New York Banking Law Section 6-*l* regulates "high-cost" home loans, which are defined

by the statute under Sections 6-*l*(1)(d) and (g).  One component of this definition is a threshold

based on the interest rate charged to the borrower.  If the interest rate on a home loan exceeds the

annual percentage rate threshold established by Section 6-*l*(1)(g)(i), then the statute's terms and

protections will apply.  Alternatively, another component of the definition of a "high-cost" home

loan is a threshold based on the points and fees charged to the borrower.  If those charges exceed

the points and fees threshold established by Section 6-*l*(1)(g)(ii), then similarly, the statute's

terms and protections will apply.  But if one of these thresholds is not met, then the home loan at

issue is not a "high-cost" home loan for purposes of the statute and its remedies, and the statute

does not apply.

Johnson alleges that his home loan comes within the scope of Section 6-*l* because Lend America and KR Management directly, and Wells Fargo, Bank of America, and Morgan Stanley indirectly, charged a "high-cost" interest rate and "high-cost" points and fees on his home loan. And he alleges that the Defendants violated the terms of Section 6-*l* that apply to a "high-cost" home loan, because they did not comply with the provisions that mandate certain disclosures and due diligence.

Specifically, Johnson alleges that the Defendants violated several sub-sections of Section 6-*l*, as follows:

Section 6-*l*(2)(k), lending without due regard to repayment ability;

Section 6-*l*(2)(l)(i), lending without counseling disclosure and list of counselors;

Section 6-*l*(2)(m), financing points and fees in an amount that exceeds three percent of the principal;

Section 6-*l*(2)(p), accepting fees other than as payment for goods or services actually performed;

Section 6-*l*(2-a)(a), issuing a mortgage without a legend stating that the mortgage is a high-cost home loan subject to Section 6-*l*; and

Section 6-*l*(3), attempting to avoid the application of Section 6-*l* in bad faith.

Under the annual percentage interest rate or "APR" threshold, a home loan is considered "high-cost" if:

[The APR] at consummation of the transaction exceeds eight percentage points over the yield on treasury securities . . . [or,] if the terms of the home loan offer any initial or introductory period, . . . then the [APR] that shall be taken into account for purposes of this section shall be the rate which applies after the initial or introductory period.

N.Y. Banking Law § 6-*l*(1)(g)(i) (McKinney 2014).

Under the points and fees threshold, a home loan is considered "high-cost" if certain points and fees exceed, in the aggregate, "five percent of the total loan amount . . . ." N.Y. Banking Law § 6-*l*(1)(g)(ii) (McKinney 2014). A wide range of enumerated charges is included within this amount, as set forth in Section 6-*l*(1)(f), but not every charge associated with a home loan is part of the calculation.

Wells Fargo, Bank of America, and Morgan Stanley argue that Johnson does not adequately state a claim under New York Banking Law because his home loan does not qualify as a "high-cost" home loan under either the APR threshold or the points and fees threshold established by Section 6-*l*(1)(g). Specifically, they argue that Johnson has not identified in his allegations an actual APR that he paid following the introductory period that lies above the applicable threshold, and that he has erroneously included in his allegations several charges that are not among the charges attributable to the points and fees threshold calculations.

Johnson responds, in substance, that the fact that his home loan has a maximum possible interest rate that exceeds the APR threshold established by Section 6-*l* is sufficient to bring the loan within the definition of a "high-cost" home loan. He also argues that the Defendants' points and fees threshold calculations are incorrect, and that all of the charges that he identifies in his allegations should be included in the threshold calculation.

For adjustable rate loans such as Johnson's, the rate that applies after the introductory period may not be known at the outset. As the legislative history reflects, adjustable rate loans may be difficult to identify as "high-cost" under the APR threshold because "no one may know if the loan is a 'high-cost home loan' [under Section 6-*l*(1)(g)(i)] until one year (or eve[n] 5 years) after the loan closes." *Memorandum from Joshua B. Toas, Esq., Assistant Secretary of*

*State and Deputy Counsel, to Hon. James M. McGuire, Esq., Counsel to the Governor* (July 22, 2002), New York Bill Jacket, 2002 Assem. B. 11856, Ch. 626.

Johnson alleges that his loan qualifies as a "high-cost" home loan because it had an introductory rate of 7.375 percent, which increased after five years to a maximum possible interest rate of 13.375 percent.  Amended Cplt. ¶ 43.  Johnson alleges that the maximum permissible APR under Section 6-*l* is 12.83 percent, corresponding to a Treasury securities yield of 4.83 percent plus eight percent.  But Johnson does not allege whether the interest rate on his home loan actually increased following the introductory period, or whether the APR actually reached a level in excess of the statutory limit.  Rather, the Amended Complaint states, "Here, Note reflects an introductory rate of 7.375% however in 2011 it shall jump to 13.375% maximum."  Amended Cplt. ¶ 43.

Section 6-*l* provides that the interest rate threshold calculation is based on the APR "at consummation of the transaction" or, for an adjustable rate mortgage note with a designated rate during an introductory period, the APR "which applies" after the introductory period is concluded.  N.Y. Banking Law § 6-*l*(1)(g)(i) (McKinney 2014).  And at least one court has observed that Section 6-*l*'s APR threshold is not met by allegations that a variable interest rate that *may* exceed the APR threshold is *possible* after an introductory period is concluded.  *See U.S. Bank N.A. v. Russell*, 19 Misc. 3d 1137(A) (N.Y. Sup. Ct. Queens Co. 2008) (holding that an assertion that the "initial interest rate set in the note was 9.110% per annum, and was variable thereafter such, does not in and of itself establish the [APR] threshold set forth in [Section 6-*l*(1)(g)(i)]").

Here, Johnson alleges that the introductory APR on his home loan was 7.375 percent, and

this rate is below the APR threshold established by Section 6-*l*. But Johnson does not allege that he paid an interest rate following the introductory period that exceeds the APR interest rate threshold. Rather, he alleges that the maximum possible post-introductory APR on his home loan is 13.375 percent. And Johnson does not allege facts sufficient to support an inference that the maximum post-introductory APR came into effect.

Accordingly, taking the well-pleaded allegations of fact and the reasonable inferences that they support as true, the Moving Defendants have shown that Johnson does not allege that his home loan had an applicable interest rate that is above the "high-cost" home loan threshold established by Section 6-*l*(1)(g)(i).

Alternatively, Johnson alleges that his home loan qualifies as a "high-cost" home loan because he was charged points and fees that exceed the five percent threshold established by Section 6-*l*. In particular, Johnson alleges that he paid points and fees totaling $23,578.86 on a total loan amount of $257,621.14, corresponding to 9.2 percent of the loan, which is significantly above the five percent threshold. Amended Cplt. ¶ 40.

New York Banking Law Section 6-*l*(1)(f) defines the points and fees that must be counted against the points and fees threshold. These include the fees listed in 15 U.S.C. § 1605(a)(1)-(4) which are service or carrying charges, loan fees, finder's fees, and credit report fees, except interest or time-price differential. These also encompass the charges listed under 12 C.F.R. § 226.4(c)(7), which include real estate-related fees such as title insurance and fees for preparing loan-related documents such as deeds and mortgages, but only if the lender receives compensation in connection with any of those charges; compensation to a mortgage broker; and premiums financed by the mortgage lender for certain kinds of insurance policies. The points

17

and fees threshold does not include any taxes or recording fees.  Nor does it include premiums for hazard and title insurance policies taken out by the borrower unless the lender received direct or indirect compensation for these policies.  "[T]he burden [is] squarely on the party wishing to include real estate fees in the calculation of the threshold amount."  *LaSalle Bank, N.A., II v. Shearon*, 23 Misc. 3d 959, 967 (N.Y. Sup. Ct. Richmond Co. 2009).

In the Amended Complaint, Johnson identifies several charges that are in the aggregate, he alleges, above the points and fees threshold established by Section 6-*l*(1)(g)(ii).  Amended Cplt. ¶ 38.  Specifically, he alleges that these include an origination fee, appraisal fee, loan discount, inspection fee, flood certification fee, tax service fee, interest, hazard insurance premium, settlement or closing fee, title insurance, pest inspection, survey, recording fee, city and county taxes, state taxes, mortgage tax, purchaser's attorney fee, and "RPT 75."  *Id*.

Several of these charges, including the origination fee and the closing fee, are plainly within the scope of the points and fees identified by Section 6-*l*(1)(f).  But equally plainly, certain of these charges are not.  For example, Johnson includes $10,553 in taxes and recording fees in his calculation, but as indicated above, these sums are not included in Section 6-*l*'s measure of points and fees that defines a "high cost" home loan.  Adjusting Johnson's calculations to exclude these payments, and based on allegations of the Amended Complaint, Johnson has alleged, at most, that he was charged total points and fees of $13,025.86 in connection with his home loan, which amounts to some 4.86 percent of the total loan amount of $268,174.14.[2]  This is below the "high-cost" home loan points and fees threshold of five

---

[2]  Pursuant to Section 6-*l*(h), the "total loan amount" is the principal amount of the home loan, here $281,200, reduced by the points and fees, here $13,025.86.

percent.[3]

In sum, Johnson alleges that he was charged points and fees of many types in connection with his home loan, and he has described those in the Amended Complaint. But only a portion of the charges identified by Johnson come within the categories enumerated in Section 6-*l*, and those do not exceed the points and fees threshold of five percent that is established by the statute to qualify a loan as a "high-cost" home loan. And Johnson does not allege facts sufficient to support an inference that the other charges that he has identified come within this measure.

Accordingly, taking the well-pleaded allegations of fact and the reasonable inferences that they support as true, the Moving Defendants have shown that Johnson does not allege that he was charged points and fees in connection with his home loan that are above the five percent "high-cost" home loan threshold established by Section 6-*l*(1)(g)(ii).

For these reasons, and based on the entire record, the Moving Defendants have shown that the Amended Complaint does not state a claim against them under New York Banking Law Section 6-*l*, because Johnson does not adequately allege facts to show that his loan was a "high-cost" home loan as defined by New York Banking Law Section 6-*l*. Therefore, for these reasons as well, the Moving Defendants' motions to dismiss Johnson's claims under New York Banking Law Section 6-*l* are granted.

*Whether the Amended Complaint States a Claim Under the FHA*

---

[3] In addition, Johnson includes $4,221 in hazard and title insurance premiums in his calculation, and alleges that Lend America received indirect compensation on account of these insurance premiums by financing 100 percent of the purchase price, including the insurance premiums. Amended Cplt. ¶¶ 36-37. The Court need not determine whether the insurance premiums should be included under the points and fees threshold because, after excluding the taxes and recording fees, the points and fees are below the five percent threshold.

The Fair Housing Act was adopted in 1968 in order to prevent invidious discrimination in residential real estate-related transactions, including discrimination on the basis of race.  As the opening section of the FHA declares, "it is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States."  42 U.S.C. § 3601.

FHA Section 3605 provides:

> It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin.

42 U.S.C. § 3605.  The FHA was enacted with "the goal of open, integrated residential housing patterns and to prevent the increase of segregation, in ghettos, of racial groups whose lack of opportunities the [FHA] was designed to combat."  *Otero v. New York City Hous. Auth.*, 484 F.2d 1122, 1134 (2d Cir. 1973).  The FHA prohibits a range of discriminatory practices.  *See generally* Rodney A. Smolla, *Federal Civil Rights Acts* (3d ed.) § 3.

The FHA establishes three basic remedial mechanisms.  These are an administrative enforcement system, with a complaint procedure to the United States Department of Housing and Urban Development, a private civil action, and an action by the United States Justice Department.  Smolla, *Federal Civil Rights Acts* at § 3:66.  A successful plaintiff in a private civil action may obtain injunctive relief and recover actual and punitive damages and reasonable attorney's fees and costs.  42 U.S.C. § 3613(c)(1) and (2).

Johnson alleges that Lend America violated the FHA by charging more discretionary fees on home loans and mortgages to African-Americans than to other borrowers.  He states that they were "ambitious to roll out tranches of loans as securities to unwary investors" and "made

20

predatory loans without any consideration of repayment capacity" of mortgage borrowers. Amended Cplt. ¶ 3. Johnson alleges that the other defendants, including Wells Fargo, Bank of America, and Morgan Stanley, violated the FHA by establishing credit policies that enabled Lend America to implement its discriminatory fee policy. And Johnson alleges that Wells Fargo and Bank of America are also liable for these violations as assignees of the loan.

<u>Whether Johnson's FHA Claims Are Barred by the Statute of Limitations</u>

A claim under the FHA must be commenced within two years of the alleged discriminatory housing practice. As the statute provides, "an aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . ." 42 U.S.C. § 3613(a)(1)(A). Congress recognized the importance of a private civil remedy in the Fair Housing Amendments Act of 1988, which extended the limitations period for such claims from 180 days, as the FHA initially provided, to two years. Fair Housing Amendments Act of 1988, Pub. L. No. 100-430, 102 Stat. 1619; *see* H.R. Rep. No. 100-711, at 17 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2178 (noting that the Fair Housing Amendments Act of 1988 "strengthen[ed] the private enforcement section by expanding the statute of limitations").

Courts recognize that discrimination may be hard to detect, and in certain circumstances, the limitations period may not begin to run at the time that the loan transaction occurs. As one court has noted, "claims under the FHA . . . are subject to the discovery rule and thus accrue when a 'plaintiff knows or has reason to know of the injury that serves as the basis for the action.'" *Clement v. United Homes, LLC*, 914 F. Supp. 2d 362, 371-72 (E.D.N.Y. 2012) (quoting *Dombrowski v. City of New York*, 116 F.3d 465, *1 (2d Cir. 1997) (unpublished table

decision)).

The Moving Defendants argue that Johnson's FHA claims are time-barred under the statute's two-year limitations period. They note that Johnson entered into his home loan and mortgage in January 2006, so that unless an exception applies, Johnson was required to assert his FHA claims no later than January 2008. The Defendants also argue that the continuing violation doctrine does not revive Johnson's claims, because his ongoing payment obligations are simply the effect or consequence of a prior alleged violation, not a new or separate violation.

Johnson responds that his FHA claims are not untimely because the limitations period should be tolled by the federal discovery rule and doctrine of equitable tolling. Johnson also argues that each demand for payment made over the life of his loan constitutes a continuing violation of each of the statutes under which he seeks relief. And Johnson argues that Morgan Stanley's policies and practices similarly amount to a continuing demand for payment by Morgan Stanley, and a renewed violation of the statute.

In particular, Johnson alleges that Morgan Stanley authorized Lend America and other lenders to accept applications on its behalf, quote financing rates, and inform credit applicants of financing options in accord with Morgan Stanley's credit policies. Amended Cplt. ¶¶ 56-57. He also alleges that Morgan Stanley advanced the funds to make loans in "all of the home-mortgage-finance-transactions at issue." Amended Cplt. ¶ 58. And Johnson argues, in substance, that because his home loan and mortgage were originated as a result of Wells Fargo's, Bank of America's, and Morgan Stanley's actions in the secondary mortgage market, each demand for payment under the original loan similarly constitutes a renewed violation of the statute by Wells Fargo, Bank of America, and Morgan Stanley. For these reasons, Johnson

states, his FHA claims are timely.

At the outset, it is clear from the record that Johnson commenced this action more than two years after he entered into his home loan. So, unless some exception to the statute of limitations such as the federal discovery rule, equitable tolling, or the continuing violation doctrine applies, Johnson's claims are barred by the FHA's two-year limitations period.

The federal discovery rule provides that in the appropriate circumstances, a cause of action may accrue, and the statute of limitations period may begin to run, not when the injury that serves as the basis for the action occurs, but when a plaintiff knows or has reason to know of the injury. As noted above, courts have applied the federal discovery rule to FHA claims, and have observed that a claim under the statute may "accrue when a 'plaintiff knows or has reason to know of the injury that serves as the basis for the action.'" *Clement*, 914 F. Supp. 2d at 371-72 (quoting *Dombrowski*, 116 F.3d 465, *1).

Here, the record shows that Johnson filed the First Adversary Proceeding against Lend America, Bank of America, and others in June 2010 and asserted claims under the FHA, the ECOA, and the Civil Rights Act. These claims are based on substantially the same facts that are set forth in the Amended Complaint. "In predatory lending cases, courts typically deem plaintiffs to be aware of their claims as of the date on which they meet with counsel." *Barkley v. Olympia Mortg. Co.*, 2007 WL 2437810, at *17 (E.D.N.Y. Aug. 22, 2007).

Even if Johnson first met with counsel as late as the date upon which the First Adversary Proceeding was filed, it is reasonable to conclude that he must have known of his possible claims of discriminatory lending practices by no later than June 2010. And even if the federal discovery rule applies here to defer the two-year limitations period to that date, Johnson would have had to

bring this action by June 2012 in order for them to be timely.

But here, the record shows that Johnson commenced this action in August 2013. That is more than three years after the latest date upon which he could have known of his claims. As a consequence, the federal discovery rule does not bring Johnson's FHA claims within the applicable two-year statute of limitations.[4]

The federal equitable tolling doctrine provides for the tolling of the applicable limitations period based on equitable considerations. It provides the framework for the court to consider, in the appropriate circumstances, whether the limitations period should not begin to run for some period of time after a cause of action has otherwise accrued. Equitable tolling is invoked in unusual and special circumstances, and modifies the balance struck by statutes of limitations between a prospective plaintiff's ability to pursue a claim and a prospective defendant's repose. As one court has noted, "'equitable tolling is available in rare and exceptional circumstances, where the court finds that extraordinary circumstances prevented the party from timely performing a required act, and that the party acted with reasonable diligence throughout the period he sought to toll.'" *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 286 (S.D.N.Y. 2011) (quoting *Williams v. Aries Fin., LLC*, 2009 WL 3851675, at *6 (E.D.N.Y. Nov. 18, 2009)).

A plaintiff must establish several elements in order to claim the benefit of equitable tolling. As explained by one court:

---

[4] The relation back rule of the Federal Rules of Civil Procedure 15(c) does not apply where, as here, there have been multiple proceedings. *See, e.g.*, *Lucchesi v. Experian Info. Solutions, Inc.*, 226 F.R.D. 172, 174-75 (S.D.N.Y. 2005) (holding that a consumer's defamation claim did not relate back to the time of filing a separate state court action).

> The federal equitable tolling standard requires plaintiffs to establish three elements: (1) that the defendant concealed the existence of the cause of action from the plaintiff; (2) that the plaintiff brought suit within the applicable limitations period upon learning of the cause of action; and (3) that the plaintiff's ignorance of the claim did not result from a lack of diligence.

*M & T Mortg. Corp. v. White*, 736 F. Supp. 2d 538, 556 (E.D.N.Y. 2010) (citing *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988)).  Each of these elements must be established in order for the equitable tolling doctrine to apply, and the failure to establish any one of these elements means that the doctrine is not available.

Here, as described above, the record shows that Johnson was aware of his possible discriminatory lending claims no later than June 2010, when he commenced the First Adversary Proceeding, and that he commenced this action in August 2013, or more than three years after the latest date upon which he could have known of his claims.  This means that Johnson does not satisfy the second requirement of the federal equitable tolling doctrine, that he brought suit within the applicable limitations period upon learning of his claim.  Equitable tolling may defer the commencement of the limitations period, but it does not extend the period itself.  As a consequence, the federal equitable tolling doctrine does not bring Johnson's FHA claims within the applicable two-year statute of limitations.

The continuing violation doctrine provides that the commencement of the statute of limitations is delayed until the last discriminatory act in furtherance of a continuous practice and policy of discrimination.  *See Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001) (discussing the continuing violation doctrine in the context of an employment discrimination lawsuit).  In the context of a remedial statute such as the FHA, it may provide a basis for relief where "a plaintiff challenges 'not just one incident of conduct violative of the [FHA], but an

25

unlawful practice that continues into the limitations period.'" *Grimes*, 785 F. Supp. 2d at 291-92

(quoting *Shelter Inc. Realty v. City of New York*, 2007 WL 29380, at *12 (E.D.N.Y. Jan. 4,

2007)). "Where it applies, the doctrine delays 'the commencement of the statute of limitations

period until the last discriminatory act in furtherance of' the alleged discriminatory policy."

*Grimes*, 785 F. Supp. 2d at 292 (quoting *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir.

2009)) (alteration omitted).

The standard to invoke this doctrine is a high one, both within and outside this Circuit.

As one court noted, "the continuing violation doctrine is heavily disfavored in the Second

Circuit." *Levine v. McCabe*, 357 F. Supp. 2d 608, 614 (E.D.N.Y. 2005). Courts in the Second

Circuit and elsewhere "'have been loath to apply the continuing violation doctrine absent a

showing of compelling circumstances.'" *Grimes*, 785 F. Supp. 2d at 292 (quoting *Trinidad v.

N.Y.C. Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006)) (alteration omitted). *See,

e.g.*, *Moseke v. Miller & Smith, Inc.*, 202 F. Supp. 2d 492, 504 (E.D. Va. 2002) (observing that

"courts . . . seem to agree that the continuing violation doctrine exception to the statute of

limitations should be narrowly applied").

To allege a continuing violation, a plaintiff must identify a specific act that is

discriminatory and that occurred within the limitations period. The act must be discriminatory in

itself, such as a decision to extend or deny credit on a discriminatory basis, as opposed to a

consequence of prior discrimination. *See Phillips v. Better Homes Depot, Inc.*, 2003 WL

25867736, at *24 (E.D.N.Y. Nov. 12, 2003) (finding that "the alleged act of discrimination, if it

occurred as plaintiff alleged, took place when the defendants extended her credit based on false

information because of her race").

26

Here, Johnson alleges that the Defendants discriminated against him at the time that he entered into his home loan and mortgage in January 2006. In order to invoke the continuing violation doctrine, Johnson asserts, in substance, that each time a payment on his loan came due, another act in violation of the FHA occurred. But Johnson does not allege facts that show how his regular monthly payment obligation on his home loan arose from a specific discriminatory act by the Defendants within the limitations period, or how this payment obligation was an act in violation of the FHA's proscriptions against discriminatory lending. Nor has he cited to authority that supports the conclusion that, in effect, the continuing violation doctrine extends the FHA's statute of limitations period over the term of the loan. As a consequence, the continuing violation doctrine does not bring Johnson's FHA claims within the applicable two-year statute of limitations.

For these reasons, and based on the entire record, the Moving Defendants have shown that the Amended Complaint does not state a claim against them under the FHA, because they have established that Johnson does not adequately allege facts to show that these claims are not time-barred. Accordingly, the Moving Defendants' motions to dismiss these claims are granted.

<u>Whether the Amended Complaint Otherwise States a Claim Under the FHA</u>

The FHA prohibits discrimination on grounds of "race, color, religion, sex, handicap, familial status, or national origin" in residential real estate transactions. In particular, FHA Section 3605 makes it unlawful for "any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." 42 U.S.C. § 3605.

Courts within and outside the Second Circuit have recognized that discrimination against a protected class in residential real estate transactions – sometimes called "reverse redlining" – may give rise to claims under the FHA.  As one court observed:

> These courts articulate the elements of a reverse redlining claim as follows: (1) plaintiff is a member of a protected class; (2) plaintiff applied for and was qualified for loans; (3) the loans were made on grossly unfavorable terms; and (4) the transaction was discriminatory. . . .  The fourth element may be satisfied by allegations of discriminatory intent, *i.e.*, that "the lender intentionally targeted [plaintiff] for unfair loans on the basis of" protected status; of disparate treatment, *i.e.*, "that the lender continues to provide loans to other applicants with similar qualifications, but on significantly more favorable terms"; or of disparate impact on the protected class.

*Williams v. 2000 Homes Inc.*, 2009 WL 2252528, at *4 (E.D.N.Y. July 29, 2009) (quoting *Matthews v. New Century Mortg. Corp.*, 185 F. Supp. 2d 874, 886-87 (S.D. Ohio 2002)).  Other courts in this Circuit are in accord.  *See, e.g.*, *Grimes*, 785 F. Supp. 2d at 300 n.33 (S.D.N.Y. 2011) (outlining the elements of a reverse redlining claim); *Barkley*, 2007 WL 2437810, at *13 (same); *Wiltshire v. Dhanraj*, 421 F. Supp. 2d 544, 554 (E.D.N.Y. 2005) (same).

Johnson alleges that Morgan Stanley routinely purchased loans with excessive debt-to-income ratios, dictated the types of loans that Lend America issued, purchased and securitized mortgage loans from Lend America where the loan-to-value ratio exceeded 100 percent, required Lend America to issue loans with adjustable rates and prepayment penalties, provided the necessary funding that allowed Lend America to remain in business, and purchased loans that deviated substantially from basic underwriting standards.  Amended Cplt. ¶ 8.  Johnson also alleges that because Lend America made loans in reliance on Wells Fargo and Bank of America repurchasing them in the secondary market, Wells Fargo's and Bank of America's policies of purchasing mortgages in the secondary market had a disparate impact on Lend America's

28

customers.  Amended Cplt. ¶ 53.

Morgan Stanley argues that Johnson's FHA claims against it should be dismissed because he does not allege facts sufficient to state a plausible claim upon which relief may be granted.  In particular, Morgan Stanley argues that Johnson does not adequately allege that he was qualified for a home loan on better terms than the one he was offered, or that Morgan Stanley's policies had a disproportionate and adverse effect on African-American borrowers.  Morgan Stanley also argues that Johnson does not adequately allege that it discriminated in purchasing home loans from Lend America or that it pooled or packaged home loans any differently on the basis of race.

Wells Fargo and Bank of America argue that Johnson's FHA claims should be dismissed because the allegations in the Amended Complaint are not directed at Wells Fargo or Bank of America and do not identify actions that they took in violation of the statute.  In particular, they note that Johnson's allegations relating to discrimination under the FHA reference only Lend America and Morgan Stanley.

As to the arguments advanced by Morgan Stanley, Johnson responds that he has adequately alleged each of the elements of his FHA claims.  He states that those allegations describe a facially neutral policy that has an adverse impact on a protected class, and that this amounts to a violation of the FHA.  In particular, Johnson argues that the data provided in the Amended Complaint show that Lend America targeted minority borrowers, and that Morgan Stanley's facially neutral policy of securitizing loans originated by Lend America was the source of the discriminatory effects suffered by those borrowers.

As to the arguments advanced by Wells Fargo and Bank of America, Johnson responds

that he has adequately stated a claim under the FHA because Wells Fargo and Bank of America may be liable under the FHA for violations arising at the time of the origination of the home loan as an assignee of his loan, and because Wells Fargo and Bank of America were "involved in this enterprise of selling toxic loans and targeting vulnerable minorities." Johnson's Opposition to Wells Fargo's and Bank of America's Motion to Dismiss ¶ 4. In particular, Johnson argues, in substance, that Lend America originated his home loan with securitization as the ultimate goal, and with Wells Fargo and Bank of America as the anticipated assignees. In this way, Johnson avers, all of the defendants, including Lend America, Wells Fargo, and Bank of America, acted as one enterprise.

As described above, the elements of a claim based on a theory of reverse redlining under the FHA are that the plaintiff is a member of a protected class, the plaintiff applied for and was qualified for a loan in connection with a residential real estate transaction, the loan was made on grossly unfavorable terms, and the transaction was discriminatory.

Here, the Amended Complaint states, in substance, that the Defendants' facially neutral policies and practices in residential real estate transactions had a disparate impact on African-American borrowers, including Johnson. The Amended Complaint sets forth data showing that in 2006, the year that Johnson entered into his home loan, Lend America originated more loans to African-American borrowers than to any other group of borrowers. Amended Cplt. ¶¶ 7-8. And the Amended Complaint states:

> "Van Johnson like similarly situated people suffered financial harm and extreme hardship." Amended Cplt. ¶ 8.

> Defendants' "Discretionary Pricing Policy, although facially neutral . . . had a disproportionately adverse effect on [African Americans] compared to similarly situated" borrowers. Amended Cplt. ¶ 61.

30

"The disparate impact suffered by [African Americans] is a direct result of" the Defendants' policies.  Amended Cplt. ¶ 62.

Taken individually and as a whole, the allegations of the Amended Complaint and the reasonable inferences that they support show that Johnson is a member of a protected class, and that he applied for and was qualified for – and received – a home loan in connection with a residential real estate transaction.  And the Amended Complaint states conclusions that are consistent with liability for discriminatory lending in violation of the FHA.  These include allegations that the "Discretionary Pricing Policy" of some or all of the defendants, while facially neutral, caused a disproportionately adverse effect on African-American borrowers including Johnson, and that Johnson, and others similarly situated, suffered financial harm and hardship.

But stating these conclusions is not the same as alleging facts that, if true, make out a FHA claim.  Johnson has not alleged facts – as opposed to conclusions – sufficient to show that his home loan was made on grossly unfavorable terms, or that the transaction was discriminatory.  Nor has he alleged facts – as opposed to conclusions – sufficient to show that the "Discretionary Pricing Policy" as implemented by some or all of the defendants had a racially discriminatory disparate impact that adversely affected African-American borrowers.  Viewed another way, while the Amended Complaint states that Lend America made home loans in connection with residential real estate transactions to African-American borrowers more than any to other group in 2006, it does not state facts sufficient to show that those loans were made on grossly unfavorable terms, or that those transactions were discriminatory.

For these reasons, and based on the entire record, the Moving Defendants have shown that the Amended Complaint does not state a claim against them under the FHA, because

Johnson does not adequately allege facts that, together with the reasonable inferences that they support, state a plausible claim for relief. Therefore, for these reasons as well, the Moving Defendants' motions to dismiss Johnson's claims under the FHA are granted.

<u>*Whether the Amended Complaint States a Claim Under the ECOA*</u>

The Equal Credit Opportunity Act prohibits creditors from discriminating against an applicant for credit on the basis of several grounds including race, color, religion, national origin, sex, marital status, and age. Like the FHA, the ECOA is remedial in nature, and provides a remedy for individuals who believe that they have been the victim of an unfair credit transaction involving residential property. As courts have noted, the practice known as reverse redlining may give rise to an ECOA claim. *See, e.g.*, *Ng v. HSBC Mortg. Corp.*, 2010 WL 889256, at *11 (E.D.N.Y. Mar. 10, 2010) (discussing the elements of a reverse redlining claim in the context of the ECOA).

The ECOA is both a civil rights law and a consumer credit law. The ECOA prohibits creditors from discriminating "against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age . . . ." 15 U.S.C. § 1691. The statute provides a private right of action, and successful plaintiffs may recover actual and punitive damages, equitable and declaratory relief, and court costs and attorney's fees. 15 U.S.C. § 1691e(a)-(d). The original version of the ECOA passed in 1974 prohibited discrimination in the granting of credit on the basis of sex or marital status only. *See* Richard M. Alderman and Dee Pridgen, *Consumer Credit and the Law* § 3:1. As one court has observed, the purpose of this legislation was "to eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider for

32

individual credit." *Anderson v. United Fin. Co.*, 666 F.2d 1274, 1277 (9th Cir. 1982). In 1976, the ECOA was expanded to ban discrimination on the basis of race, color, religion, national origin, and age.

As with his FHA claims, Johnson alleges that Lend America violated the ECOA by charging more discretionary fees on home loans and mortgages to African-Americans than to other borrowers. He asserts that they were "ambitious to roll out tranches of loans as securities to unwary investors" and "made predatory loans without any consideration of repayment capacity" of mortgage borrowers. Amended Cplt. ¶ 3. Johnson alleges that the other defendants, including Wells Fargo, Bank of America, and Morgan Stanley, violated the ECOA by establishing credit policies that enabled Lend America to implement its discriminatory fee policy. And he asserts that the Wells Fargo and Bank of America are also liable for these violations as assignees of the loan.

<u>Whether Johnson's ECOA Claims Are Barred by the Statute of Limitations</u>

At the time that Johnson entered into his home loan and mortgage, the ECOA provided that a claim for relief had to be brought within two years after the date that the discriminatory credit practice occurred.[5] 15 U.S.C. § 1691e(f). As with FHA claims, direct evidence of invidious discrimination can be hard to uncover, and the limitations period may not begin to run until the plaintiff knows or reasonably should know that a violation has occurred.

---

[5] The statute of limitations for a claim under the ECOA was extended from two to five years in July 2010 by the Dodd-Frank Wall Street Reform and Consumer Protection Act. That amendment is not applicable to Johnson's claims. *See Cottrell v. Vilsack*, 915 F. Supp. 2d 81, 90 & n.7 (D.D.C. 2013) (noting that the applicable statute of limitations under the ECOA was two years at the time of the claim); *Citgo Petroleum Corp. v. Bulk Petroleum Corp.*, 2010 U.S. Dist. LEXIS 82277, at *8 n.4 (N.D. Okla. Aug. 12, 2010) (holding that the Dodd-Frank extension did not apply retroactively).

The Moving Defendants argue that, like his FHA claims, Johnson's ECOA claims are time-barred under the statute's two-year limitations period. They argue that Johnson entered into his home loan and mortgage in January 2006, so that unless an exception applies, Johnson was required to assert his ECOA claims no later than January 2008. The Moving Defendants also argue the federal discovery rule does not apply to ECOA claims. In particular, they note that at least one court in this Circuit has concluded that because the ECOA's statute of limitations begins to run from the "occurrence" of a violation, its text does not support a discovery rule. *Adkins v. Morgan Stanley*, 2013 WL 3835198, at *7 (S.D.N.Y. July 25, 2013). And the Moving Defendants argue that, as with Johnson's FHA claims, the continuing violation doctrine cannot save his ECOA claims, because his ongoing payment obligations are not a new or separate violation of the statute.

Johnson responds that, as with his FHA claims, his ECOA claims are not untimely because the statute of limitations should be tolled by the federal discovery rule and the doctrine of equitable tolling. He notes that courts have held that the federal discovery rule applies in ECOA actions. In particular, he cites *Jones v. Ford Motor Credit Co.*, 2002 WL 88431, at *5 (S.D.N.Y. Jan. 22, 2002), where the court observed that "courts have relied on the federal discovery rule in ECOA cases," and *Estate of Henderson v. Meritage Mortg. Corp.*, 293 F. Supp. 2d 830, 835 (N.D. Ill. 2003), where the court applied the federal discovery rule for a claim under the ECOA.

It is clear from the record that Johnson commenced this action more than two years after he entered into his home loan. As a result, his claims are barred by the ECOA's two-year limitations period unless an exception, such as the federal discovery rule, equitable tolling, or the

continuing violation doctrine, applies.

Courts have reached different conclusions as to whether the federal discovery rule applies to ECOA claims. Some have concluded, as Johnson notes, that the rule applies to ECOA claims. *See, e.g.*, *Trakansook v. Astoria Fed. Sav. & Loan Ass'n*, 2007 WL 1160433, at *10 (E.D.N.Y. Apr. 18, 2007) (observing that "some district courts have applied the 'federal discovery rule' to ECOA claims"); *Jones*, 2002 WL 88431, at *5 (observing that "courts have relied on the federal discovery rule in ECOA cases").

Other courts have been reluctant to apply the federal discovery rule to extend the ECOA limitations period beyond the two-year period provided by the statute. As one court found, the "ECOA's text . . . does not support a discovery rule." *Adkins*, 2013 WL 3835198, at *7. *See Archer v. Nissan Motor Acceptance Corp.*, 550 F.3d 506, 508 (5th Cir. 2008) (holding that "a discovery rule does not apply to ECOA claims"). These courts note that the Supreme Court's reasoning in *TRW Inc. v. Andrews*, 534 U.S. 19 (2001), which held that the discovery rule did not apply to toll the statute of limitations on an "improper disclosure" claim under the Fair Credit Reporting Act, supports a similar finding with respect to the ECOA. These courts reason that like the Fair Credit Reporting Act, the ECOA sets forth exceptions to its limitations period, and to imply a general discovery rule for ECOA claims would render those statutory exceptions superfluous. *See Adkins*, 2013 WL 3835198 at *7.

Here, as described above, the record shows that Johnson must have been aware of his possible claims of discriminatory lending practices by no later than June 2010. As a consequence, the federal discovery rule would extend the limitations period, at the most, through June 2012. And here, Johnson commenced this action in August 2013, or more than three years

after he must have known of his claims.  That is, even if it applies in the consideration of an

ECOA claim, the federal discovery rule would not make Johnson's claims timely.

For substantially the same reasons, the doctrine of equitable tolling does not save

Johnson's claims from the bar of the ECOA's two-year statute of limitations.  As described

above, one of the elements of equitable tolling is that the plaintiff commenced an action within

the applicable limitations period upon learning of his claim.  But here, while the record shows

that Johnson knew of his possible discriminatory lending claims no later than June 2010, he did

not bring this action until August 2013, or more than three years later.

As a result, even if Johnson could satisfy the other elements of the equitable tolling

doctrine – that the defendant concealed the existence of the cause of action from him and that his

ignorance of his claims did not result from a lack of diligence – the requirements of equitable

tolling are not met, and the doctrine does not save Johnson's ECOA claims from the two-year

statute of limitations.

Finally, Johnson cites the continuing violation doctrine to urge, in substance, that each

time a payment on his home loan came due, another violation of the ECOA occurred.  As

described above, the continuing violation doctrine is not favored in this Circuit, and it is applied

only in compelling circumstances.  Johnson does not allege facts that show his regular monthly

payment obligation on his home loan amounts to invidious discrimination against him as an

applicant for credit.  Nor does he identify authority that indicates that such a conclusion would

be consistent with the terms of the Act.  Accordingly, the continuing violation doctrine does not

bring Johnson's ECOA claims within the statute's two-year limitations period.

For these reasons, and based on the entire record, the Moving Defendants have shown

that the Amended Complaint does not state a claim against them under the ECOA, because they have established that Johnson does not adequately allege facts to show that these claims are not time-barred.  Accordingly, the Moving Defendants' motions to dismiss these claims are granted.

<u>Whether the Amended Complaint Otherwise States a Claim Under the ECOA</u>

The ECOA prohibits creditors from discriminating "against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age . . . ."  15 U.S.C. § 1691.  *See* 12 C.F.R. § 202.1.  The ECOA defines a "creditor" as "any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit."  15 U.S.C. § 1691a(1).

Courts recognize that the ECOA serves an important purpose in providing a remedy to an applicant for credit who believes that he or she has been the victim of discrimination based on a prohibited grounds, including race.  As one court observed, the initial purpose of the ECOA was "to eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider for individual credit."  *Anderson*, 666 F.2d at 1277.  In 1976, that purpose was expended and the ECOA was amended to ban discrimination on the basis of race, color, religion, national origin, and age.

The ECOA recognizes two principal theories of liability, disparate treatment and disparate impact.  To establish a claim under the ECOA, "a plaintiff must allege that she was a member of a protected class, that she was qualified for the loan that she requested, and that the lender declined the loan and showed a preference for a non-protected individual."  *Powell v. Am.*

37

*Gen. Fin., Inc.*, 310 F. Supp. 2d 481, 487 (N.D.N.Y. 2004).

But protection by the statute "is not limited to those applicants who were rejected" for credit.  *Wilson v. Toussie*, 260 F. Supp. 2d 530, 541 (E.D.N.Y. 2003) (citing *Hargraves v. Capital City Mortg. Corp.*, 140 F. Supp. 2d 7, 22 (D.D.C. 2000)).  In other words, to state a claim under the ECOA, plaintiffs "need not allege that they were denied credit, so long as they allege that they were discriminated against in the terms of their credit based on the sex, marital status, or age." *Matthews*, 185 F. Supp. 2d at 887.  "To establish a *prima facie* case under a disparate impact theory, a plaintiff must identify a specific policy or practice which the defendant has used to discriminate and must also demonstrate with statistical evidence that the practice or policy has an adverse effect on the protected group."  *Powell*, 310 F. Supp. 2d at 487 (citing *Jones*, 2002 WL 88431, at *3).

As with his FHA claims, Johnson alleges that his ECOA claims arise from Morgan Stanley's activities in the residential home mortgage market.  He alleges that Morgan Stanley routinely purchased loans with excessive debt-to-income ratios, dictated the types of loans that Lend America issued, purchased and securitized mortgage loans from Lend America where the loan-to-value ratio exceeded 100 percent, required Lend America to issue loans with adjustable rates and prepayment penalties, provided the necessary funding that allowed Lend America to remain in business, and purchased loans that deviated substantially from basic underwriting standards.  Amended Cplt. ¶ 8.  Johnson also alleges that because Lend America made loans in reliance on Wells Fargo and Bank of America repurchasing them in the secondary market, Wells Fargo's and Bank of America's policies of purchasing mortgages in the secondary market had a disparate impact on Lend America's customers.  Amended Cplt. ¶ 53.

Morgan Stanley argues that the ECOA does not permit Johnson to recover against it because Morgan Stanley did not participate in the decision to extend credit to him. In addition, Morgan Stanley argues that Johnson does not adequately allege that he was qualified for a home loan on better terms than the one he was offered, or that Morgan Stanley's policies had a disproportionate and adverse effect on African-American borrowers. Morgan Stanley also argues that Johnson does not adequately allege that it discriminated in purchasing loans from Lend America or that it pooled or packaged loans any differently on the basis of race.

Wells Fargo and Bank of America argue that Johnson's ECOA claims should be dismissed because the allegations in the Amended Complaint are not directed at Wells Fargo or Bank of America and do not identify actions that they took in violation of the statute. In particular, they note that Johnson's allegations relating to discrimination under the ECOA reference only Lend America and Morgan Stanley.

As to the arguments advanced by Morgan Stanley, Johnson makes substantially the same response that he offers in support of his FHA claims. He responds that he has adequately alleged each of the elements of his ECOA claims. He states that those allegations describe a facially neutral policy that has an adverse impact on a protected class, and that this amounts to a violation of the ECOA. In particular, Johnson argues that the data provided in the Amended Complaint show that Lend America targeted minority borrowers, and that Morgan Stanley's facially neutral policy of securitizing loans originated by Lend America was the source of the discriminatory effects suffered by those borrowers.

As to the arguments advanced by Wells Fargo and Bank of America, Johnson again makes substantially the same response that he offers in support of his FHA claims. He responds

that he has adequately stated a claim under the ECOA because Wells Fargo and Bank of America may be liable under the ECOA as assignees of his home loan for violations that occurred at the time the loan was made, and because they were "involved in this enterprise of selling toxic loans and targeting vulnerable minorities." Johnson's Opposition to Wells Fargo's and Bank of America's Motion to Dismiss ¶ 4. In particular, Johnson argues, in substance, that Lend America originated his home loan with securitization as the ultimate goal, and with Wells Fargo and Bank of America as the anticipated assignees. In this way, Johnson avers, all of the defendants, including Lend America, Wells Fargo, and Bank of America, acted as one enterprise.

As described above, the elements of a claim under the ECOA are that the plaintiff is a member of a protected class, and that he or she was discriminated against in the terms of his or her credit based on race, color, religion, national origin, sex, marital status, or age. For disparate impact claims, a plaintiff must identify a specific policy or practice which the defendant has used to discriminate and must also demonstrate with statistical evidence that the practice or policy has an adverse effect on the protected group. Courts recognize that an ECOA claim may be based on a theory of reverse redlining. As one court observed, "reverse-redlining plaintiffs can establish an ECOA claim by showing that they were 'discriminated against in the terms of their credit based on the sex, marital status, or age.'" *Ng*, 2010 WL 889256, at *11 (quoting *Matthews*, 185 F. Supp. 2d at 887).

Here, the Amended Complaint states, in substance, that the Defendants' facially neutral policies and practices in residential home lending had a disparate impact on African-American borrowers, including Johnson. As noted above, the Amended Complaint sets forth data showing that in 2006, the year that Johnson entered into his home loan, Lend America originated more

40

loans to African-American borrowers than to any other group of borrowers.  Amended Cplt. ¶¶ 7-8.  And as also noted above, the Amended Complaint states that Johnson and other similarly situated people suffered hardship; that the Defendants' "Discretionary Pricing Policy" caused a disproportionately adverse effect on African-Americans.  Amended Cplt. ¶¶ 8, 61, 62.

Taken individually and as a whole, the allegations of the Amended Complaint and the reasonable inferences that they support show that Johnson is a member of a protected class, and that he applied for and was qualified for – and received – a home loan in connection with a residential real estate transaction.  And the Amended Complaint states conclusions that are consistent with liability for discriminatory lending in violation of the ECOA.  These include allegations that the Defendants' "Discretionary Pricing Policy," while facially neutral, caused a disproportionately adverse effect on African-American borrowers including Johnson, and that Johnson, and others similarly situated, suffered financial harm and hardship.

But just as with Johnson's FHA claims, stating these conclusions is not the same as alleging facts that, if true, make out a ECOA claim.  Johnson has not alleged facts – as opposed to conclusions – sufficient to show that he was the victim of discrimination in connection with his home loan application.  Nor has he alleged facts – as opposed to conclusions – sufficient to show that the Defendants' implementation of the "Discretionary Pricing Policy" had a racially discriminatory disparate impact that adversely affected African-American applicants for credit.  Viewed another way, while the Amended Complaint states that Lend America made home loans in connection with residential real estate transactions to African-American borrowers more than to any other group in 2006, it does not state facts sufficient to show that the Moving Defendants engaged in prohibited discriminatory conduct in connection with considering and entering into

41

those loans.

For these reasons, and based on the entire record, the Moving Defendants have shown that the Amended Complaint does not state a claim against them under the ECOA, because Johnson does not adequately allege facts that, together with the reasonable inferences that they support, state a plausible claim for relief.  Therefore, for these reasons as well, the Moving Defendants' motions to dismiss Johnson's claims under the ECOA are granted.

<u>Whether the Amended Complaint States a Claim Under the Civil Rights Act</u>

The Civil Rights Act was adopted in 1866, following the ratification of the Thirteenth Amendment to the United States Constitution.  The Civil Rights Act was designed "to prohibit all racial discrimination, whether or not under color of law, with respect to the rights enumerated therein – including the right to purchase or lease property." *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 436 (1968).  After 1866, the original law underwent a series of reenactments, and ultimately its principal sections were codified as 42 U.S.C. §§ 1981 and 1982.  *See generally* Smolla, *Federal Civil Rights Acts* § 13.  As the Supreme Court observed, the "intervening revisions" of the statute "have not been meant to alter [its] substance."  *Alfred H. Mayer Co.*, 392 U.S. at 453.

Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  Section 1981 is broad in its scope, "because it covers *all* contracts . . . ." *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 304 (1994).  And at least one court has determined

that housing discrimination can give rise to a violation of Section 1981.  *See Resident Advisory Bd. v. Rizzo*, 564 F.2d 126 (3d Cir. 1977) (holding that the City of Philadelphia violated Section 1981 by acting with discriminatory intent in delaying the construction of a low-income housing project).

Section 1982 specifically addresses race discrimination arising in the context of property. This section states that "all citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."  42 U.S.C. § 1982.  As the Supreme Court has found, the statute "prohibit[s] all discrimination against [African-Americans] in the sale or rental of property."  *Alfred H. Mayer Co.*, 392 U.S. at 421.

As with his claims under the FHA and the ECOA, Johnson alleges that the Defendants violated Civil Rights Act Sections 1981 and 1982 by charging more discretionary fees on mortgages to African-Americans than to other borrowers.  He alleges that the Defendants "intentionally discriminat[ed] against [Johnson] by charging higher interest rates and other fees and costs than were charged to similarly situated non-minority borrowers."  Amended Cplt. ¶ 73.

<u>Whether Johnson's Civil Rights Act Claims Are Barred by the Statute of Limitations</u>

The determination of the applicable statute of limitations for Johnson's Civil Rights Act claims requires a series of inquiries, and where federal law does not provide the answer, it also requires "borrowing" an appropriate limitations period from the analogous state law.

The starting point for the determination of the applicable statute of limitations is the familiar doctrine of "borrowing" a limitations period from state law.  As the Second Circuit has noted, it is the practice in this Circuit to "borrow[] the state statute of limitations for personal

injury actions for analogous federal discrimination actions brought pursuant to [Section 1981]."
*Curto v. Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004).  Applying this rule, another court observed, "'there is no federal statute of limitations governing the Reconstruction-era civil rights statutes, [so] federal courts should select the most appropriate or analogous state statute of limitations to determine the proper limitations period.'"  *Clement*, 914 F. Supp. 2d at 370 (quoting *Bacon v. Suffolk Legislature*, 2007 WL 2288044, at *4-5 (E.D.N.Y. Aug. 8, 2007)).  Under New York law, the most appropriate statute of limitations is set forth in CPLR 214(5), which provides that "an action to recover damages for a personal injury" must be commenced within three years.  N.Y. C.P.L.R. 214 (McKinney 2014).

There is one qualification to this general rule.  Where appropriate, courts may also look to the federal "catch-all" statute of limitations set forth in 28 U.S.C. § 1658(a), which "prescrib[es] a four-year limitations period for all civil actions 'arising under an Act of Congress enacted after the date of the enactment' of [Section 1658]."  *Sundaram v. Brookhaven Nat'l Labs.*, 424 F. Supp. 2d 545, 564 (E.D.N.Y. 2006).  That is, if a federal cause of action arises under a statute enacted after the 1990 adoption of Section 1658, a four-year limitations period applies.

In 1991, Congress amended Section 1981 of the Civil Rights Act to broaden its scope.  Specifically, Congress expanded the scope of Section 1981 by defining the phrase "to make and enforce contracts" to include the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  As a consequence, "the applicable statute of limitations for [a] § 1981 claim turns on whether plaintiff states a claim under the statute as it was originally

passed, or under its 1991 Amendments." *Clement*, 914 F. Supp. 2d at 370. "[W]here a plaintiff

brings a claim established by the original § 1981, that claim is subject to the 'borrowed

limitations periods from state law.'" *Clement*, 914 F. Supp. 2d at 370 (quoting *R.R. Donnelley &*

*Sons*, 541 U.S. at 382).

Here, as to his Section 1981 claims, Johnson alleges, in substance, that because of his

race, he was offered a home loan and mortgage on unfavorable terms. That is, he alleges that the

Defendants discriminated against him in connection with respect to the making of a contract, and

accordingly his Section 1981 claim arises under the original terms of the statute. As a result, it is

appropriate to "borrow" the three-year statute of limitations set forth in CPLR 214(5) to

determine the timeliness of Johnson's Section 1981 claims.

And as to Johnson's Section 1982 claims, federal law does not provide a statute of

limitations for claims such as those that Johnson asserts here. As a consequence, here too,

federal courts look to state law to identify, or "borrow," the appropriate limitations period. For

Section 1982 actions, "federal courts in New York follow the three-year limitations period set by

[CPLR] 214(5)." *Clement*, 914 F. Supp. 2d at 370.

The Moving Defendants argue that Johnson's Civil Rights Act claims are time-barred

under the applicable three-year statute of limitations. They note that Johnson entered into his

home loan and mortgage in January 2006, so that unless an exception applies, Johnson was

required to assert his Civil Rights Act claims no later than January 2009. The Moving

Defendants also argue that the continuing violation doctrine does not save Johnson's claims,

because his ongoing payment obligations are no more than the effect or consequence of a prior

alleged violation, not a new or separate violation.

Johnson responds that the limitations period should be tolled by the federal discovery rule and doctrine of equitable tolling.  Johnson also argues that each demand for payment constitutes a continuing violation of each of the statutes under which he seeks relief.  And Johnson argues that Morgan Stanley's policies and practices similarly amount to a continuing demand for payment by Morgan Stanley, and a renewed violation of the statute.

As described above, a three-year limitations period applies to Johnson's Civil Rights Act claims.  And the record shows that Johnson commenced this action more than three years after he entered into his home loan.  As a result, unless an exception applies, the limitations period for Johnson's claims under the Civil Rights Act expired in January 2009, and these claims are time-barred.

As also described above, the federal discovery rule provides that if the necessary requirements are met, the limitations period may begin to run not when the injury that serves as the basis for the action occurs, but when a plaintiff knows or has reason to know of the injury.  As one court has noted, "claims under [Civil Rights Act Sections 1981 and 1982] are subject to the discovery rule and thus accrue when a 'plaintiff knows or has reason to know of the injury that serves as the basis for the action.'"  *Clement*, 914 F. Supp. 2d at 371-72 (quoting *Dombrowski*, 116 F.3d 465, *1).

Here, as described above, the record shows that Johnson must have been aware of his possible claims of discriminatory lending practices by no later than June 2010, when he filed the First Adversary Proceeding asserting discriminatory lending claims.  As a consequence, the federal discovery rule would extend the limitations period, at the most, through June 2013.  And here, Johnson commenced this action in August 2013, or more than three years after he knew or

had reason to know of his claims.  That is, the federal discovery rule does not make Johnson's Section 1981 and 1982 claims timely.

For substantially the same reasons, the doctrine of equitable tolling does not save Johnson's claims from the bar of the three-year statute of limitations for claims under Sections 1981 and 1982.  Equitable tolling is a narrow doctrine, and it is rarely invoked.  It requires, among other elements, that the plaintiff commence an action within the applicable limitations period upon learning of his claim.  But here, while the record shows that Johnson knew of his possible discriminatory lending claims no later than June 2010, he did not bring this action until August 2013, or more than three years later.  As a consequence, even if Johnson could satisfy the other elements of the equitable tolling doctrine – that the defendant concealed the existence of the cause of action from him and that his ignorance of his claims did not result from a lack of diligence – this doctrine does not save Johnson's Section 1981 and 1982 claims from the three-year statute of limitations.

Finally, Johnson cites the continuing violation doctrine to urge, in substance, that each time a payment on his home loan came due, another violation of the Civil Rights Act occurred.  As described above, the continuing violation doctrine extends the commencement of the limitations period until the last discriminatory act that furthers the alleged discriminatory policy.  The continuing violation doctrine is not favored in this Circuit, and it is applied only in compelling circumstances.  Johnson does not allege facts that show his regular monthly payment obligation on his home loan amounts to invidious discrimination against him in violation of Section 1981 or 1982.  Nor does he otherwise show why the statute of limitations should, in effect, extend for the full term of his loan.  Accordingly, the continuing violation doctrine does

not bring Johnson's Section 1981 and 1982 claims within the applicable three-year limitations period.

For these reasons, and based on the entire record, the Moving Defendants have shown that the Amended Complaint does not state a claim against them under Sections 1981 and 1982, because they have established that Johnson does not adequately allege facts to show that these claims are not time-barred.  Accordingly, the Moving Defendants' motions to dismiss these claims are granted.

<u>Whether the Amended Complaint Otherwise States a Claim Under the Civil Rights Act</u>

Section 1981 of the Civil Rights Act prohibits intentional discrimination on the basis of race with respect to making and enforcing contracts, and Section 1982 prohibits intentional discrimination on the basis of race with respect to inheriting, purchasing, leasing, selling, holding, and conveying real and personal property.

"To state a claim for relief under Sections 1981 and 1982, a complaint must allege: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more activities enumerated in Section 1981 or Section 1982."  *Barkley*, 2007 WL 2437810, at *10 (citing *Jones v. Nat'l Commc'n & Surveillance Networks*, 409 F. Supp. 2d 456, 470 (S.D.N.Y.2006)).

A disparate impact theory "is not a valid basis for a § 1981 claim."  *Cancel v. Home Depot*, 488 F. App'x 520, 521 (2d Cir. 2012).  Likewise, to state a claim under Section 1982, "a plaintiff must allege that she was intentionally deprived of a property right because of her race."  *Wiltshire*, 421 F. Supp. 2d at 555 (citations and alterations omitted).

As with his FHA and ECOA claims, Johnson alleges that his Civil Rights Act claims

48

arise from Wells Fargo's, Bank of America's, and Morgan Stanley's activities in the residential home mortgage market.  He alleges that Morgan Stanley routinely purchased loans with excessive debt-to-income ratios, dictated the types of loans that Lend America issued, purchased and securitized mortgage loans from Lend America where the loan-to-value ratio exceeded 100 percent, required Lend America to issue loans with adjustable rates and prepayment penalties, provided the necessary funding that allowed Lend America to remain in business, and purchased loans that deviated substantially from basic underwriting standards.  Amended Cplt. ¶ 8.  He further argues that Lend America originated Johnson's home loan with securitization as the ultimate goal, and with Wells Fargo and Bank of America as the anticipated assignees.  In this way, Johnson avers, all of the defendants, including Lend America, Wells Fargo, and Bank of America, acted as one enterprise.

In addition, in the context of these Civil Rights Act claims, Johnson alleges that the Defendants carried out these activities "with malice and reckless indifference to the federally protected rights of the plaintiff," and amounted to "intentional discriminat[ion]."  Amended Cplt. ¶¶ 73, 77.

Morgan Stanley argues that Johnson does not state claims under Civil Rights Act Sections 1981 and 1982 because he does not adequately allege any intentional discriminatory conduct on the part of Morgan Stanley.  In addition, Morgan Stanley argues that the Amended Complaint is grounded in a disparate impact theory, which is not a valid theory of recovery for claims under Section 1981 or 1982.

Wells Fargo and Bank of America argue that Johnson's Civil Rights Act claims should be dismissed because the allegations in the Amended Complaint are not directed at Wells Fargo

or Bank of America and do not identify actions that they took in violation of the statute.  In particular, they note that Johnson's allegations relating to discrimination under the Civil Rights Act make reference only to Lend America and Morgan Stanley.

Johnson responds that he has adequately alleged claims under the Civil Rights Act under a disparate impact theory.  He argues that the Supreme Court has recognized that evidence of disparate impact may give rise to Civil Rights Act claims, including in the landmark decisions of *Washington v. Davis*, 426 U.S. 229 (1976), and *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977).  Johnson notes that while these cases do not recognize a disparate impact theory of recovery under the Civil Rights Act, they support the proposition that such disparate impact evidence is relevant to the determination that the Defendants intentionally discriminated on the basis of race.

Here, the Amended Complaint states, in substance, that the Defendants intentionally discriminated against Johnson by charging higher interest rates and fees on his home loan than were charged to similarly situated borrowers who were not minorities.  In particular, Johnson alleges that the Defendants acted with "malice and reckless indifference" to his rights under the Civil Rights Act.  Amended Cplt. ¶ 77.

Taken individually and as a whole, the allegations of the Amended Complaint and the reasonable inferences that they support show that Johnson is a member of a racial minority, and that the alleged discrimination arises in the context of actions that are within the scope of Civil Rights Act Sections 1981 and 1982 – namely, making contracts and the purchase of real property.  And the Amended Complaint states conclusions that are consistent with liability for violations of these statutes.  These include allegations that the Defendants "intentionally

discriminat[ed]."  Amended Cplt. ¶ 73.

But just as with Johnson's FHA and ECOA claims, stating these conclusions is not the same as alleging facts that, if true, make out a Civil Rights Act claim.  Johnson has not alleged facts – as opposed to conclusions – sufficient to show that he was the victim of intentional discrimination in connection with purchasing his home, or entering into the contract for his home loan.  Nor has he cited to authority that supports the conclusion that a disparate impact theory is a valid basis for asserting a claim under Section 1981 or 1982.  Viewed another way, while the Amended Complaint states that Lend America made home loans in connection with residential real estate transactions to African-American borrowers more than to any other group in 2006, it does not state facts sufficient to show that the Moving Defendants engaged in prohibited, intentional, discriminatory conduct in connection with considering and entering into those loans.

For these reasons, and based on the entire record, the Moving Defendants have shown that the Amended Complaint does not state a claim against them under Civil Rights Act Section 1981 or Section 1982, because Johnson does not adequately allege facts that, together with the reasonable inferences that they support, state a plausible claim for relief.  Therefore, for these reasons as well, the Moving Defendants' motions to dismiss Johnson's claims under the Civil Rights Act are granted.

### *Whether Wells Fargo's Proof of Claim Should Be Disallowed as Untimely*

Wells Fargo and Bank of America argue that because Johnson filed this objection after his plan was confirmed, it is untimely.  They urge, among other things, that Johnson commenced this adversary proceeding almost a year after his Chapter 13 plan was confirmed and four years after the proof of claim was filed, and that Johnson has had ample opportunity to raise these

issues.

Johnson responds that there is no deadline to file an objection to a proof of claim. He argues, in substance, that so long as the claim is being paid or enforced, his right to object to the proof of claim should not be extinguished.

Neither the Bankruptcy Code nor the Bankruptcy Rules sets a time limit for objecting to a proof of claim in a Chapter 13 case. Some districts have fixed a deadline by local rule. For example, in the Northern District of New York, Local Bankruptcy Rule 3007-1(d) provides that objections to claims in a Chapter 13 case must be filed within 45 days of the trustee's service of the "Notice of Claims Filed and of Trustee's Intent to Pay Claims as Listed." And in the District of New Jersey, Local Bankruptcy Rule 3007-1(b) provides that objections to Chapter 13 claims must "be filed within 60 days after the later of confirmation of the plan or the filing of the claim or amended claim." In some circuits, a deadline has been fixed at plan confirmation. *See, e.g.*, *In re Bateman*, 331 F.3d 821, 827 (11th Cir. 2003) (observing that "although § 502(a) does not provide for a time limit to file an objection, it must be filed *prior* to plan confirmation").

But in this District and Circuit, neither a local rule nor the applicable law fixes a deadline for objections to a proof of claim. That is not to say that an objection to a proof of claim can never be untimely. As one court observed, "even if the Bankruptcy Code and Rules do not set a deadline for claims objections in a chapter 13 case, . . . allowing a claims objection four years after confirmation and after entry of the discharge would be an improper and inequitable exercise of the Court's authority." *In re Armstrong*, 434 B.R. 120, 129 (Bankr. S.D.N.Y. 2010).

Here, the record shows that Johnson filed his first Chapter 13 plan on November 25, 2009, and Wells Fargo filed a proof of claim in Johnson's bankruptcy case about one month

later, on December 30, 2009.  From June 2010 to July 2012, Johnson filed some seven additional amended Chapter 13 plans and addressed several objections to confirmation, including objections advanced by Wells Fargo and Bank of America.  On August 29, 2012, Johnson filed his ninth Chapter 13 plan and on September 18, 2012, without objection, this Court confirmed that Chapter 13 plan.  Johnson filed this adversary proceeding and objection to claim nine days later, on September 27, 2012.  More than one year later, on November 11, 2013, Wells Fargo amended its proof of claim, and again amended its proof of claim on January 8, 2014.

Viewed in light of the totality of these proceedings and circumstances, Johnson's objection, filed as an adversary proceeding just nine days after the Court confirmed his Chapter 13 plan, is not untimely under any rule that is controlling in this District or Circuit.  Nor does it appear improper or inequitable to consider the objection to claim on other grounds.  For these reasons, the Court declines to overrule Johnson's objection to Wells Fargo's proof of claim on timeliness grounds.  The Court leaves for another day whether Johnson's objection to the proof of claim should be sustained.

For these reasons, and based on the entire record, Wells Fargo's motion to dismiss Johnson's objection to its proof of claim on grounds that it is untimely is denied.

### Leave To Replead Dismissed Claims

Rule 15 of the Federal Rules of Civil Procedure, made applicable here by Bankruptcy Rule 7015, states that permission to amend a complaint should be freely granted "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  As the Supreme Court has observed, "if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  *Foman v. Davis*, 371 U.S. 178, 182

(1962).  At the same time, Rule 15 does not afford a plaintiff an absolute right to replead or amend its claims.

Courts weigh many factors in considering whether leave to replead is warranted.  These include whether the plaintiff has previously amended its claims, whether undue delay or prejudice would result from allowing the amendment, whether indicia of bad faith are present, and whether amendment would be futile.  *See Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002) (leave to amend may be denied for reasons "such as futility, bad faith, undue delay, or undue prejudice to the opposing party").

The question of futility often merits special consideration.  As the Second Circuit has observed, "in determining whether leave to amend should be granted, the district court has discretion to consider, inter alia, the apparent 'futility of amendment[.]' . . . Amendment would likely be futile if, for example, the claims the plaintiff sought to add would be barred by the applicable statute of limitations."  *Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000) (quoting *Foman*, 371 U.S. at 182).  If the record shows that even an amended pleading cannot cure the shortcomings of the complaint, then leave to replead would only delay the inevitable dismissal of the action.

Reaching this conclusion requires a measure of certainty about what a plaintiff *could* allege in an amended pleading, and that may be difficult to discern at the stage of an initial pleading.  As the Second Circuit has found, "leave to file an amended complaint is generously granted," particularly when the plaintiff has not previously been granted leave to amend in that case.  *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 815 (2d Cir. 1996) (denying leave to replead where "the District Court had already granted

54

plaintiffs the right to amend their complaint once"). *See Solow v. Citigroup, Inc.*, 2012 WL 1813277 (S.D.N.Y. 2012) (denying leave to replead after permitting the plaintiff to amend his complaint in response to an earlier motion to dismiss); *In re Ultrafem Inc. Sec. Litig.*, 91 F. Supp. 2d 678, 704 (S.D.N.Y. 2000) (same).

Viewed another way, as this Court has noted, "where a plaintiff has made a single attempt to state a claim, and the prospect of a plausible claim is suggested, but not established, by the allegations, then it may be that a court's discretion should tip in favor of allowing an amendment." *Ridley v. Deutsche Bank Nat'l Trust Co. (In re Ridley)*, 453 B.R. 58, 77 (E.D.N.Y. 2011). At the same time, "where a proposed amended pleading would not survive a motion to dismiss, it is within a trial court's discretion to deny leave to replead." *Id.*

Ultimately, the question of leave to replead is committed to the sound discretion of the court. As one court has stated, "it is well-established in the Second Circuit that leave to amend should be granted freely though the district court may exercise its discretion to deny a motion to amend if there is a good reason for it." *In re Ashanti Goldfields Sec. Litig.*, 2004 WL 626810, at *2 (E.D.N.Y. Mar. 30, 2004).

Morgan Stanley argues that Johnson should not be granted leave to amend his claims, on grounds that any amendment would be futile. It notes that Johnson does not identify how he would supplement his allegations to cure the shortcomings in his claims. And Morgan Stanley argues that amendment would be futile because Johnson cannot overcome the fact that his claims are time-barred, or plead sufficient facts to move his claims across the divide from inadequate to plausible.[6]

---

[6] Wells Fargo and Bank of America do not address the question of leave to replead.

Johnson responds that if the Court concludes that the claims as set forth in the Amended Complaint are inadequate, then he should be permitted to amend them. He argues, in substance, that for the same reasons that his claims should not be dismissed, the Court should exercise its discretion to allow him leave to replead in the event that it finds that the Amended Complaint is inadequate to state a plausible claim for relief.

Here, the Court has concluded that the Moving Defendants have shown that Johnson's claims under New York Banking Law Section 6-*l* and the FHA, ECOA, and Civil Rights Act should be dismissed because they were not brought within the applicable statutes of limitations, and because there are not grounds to toll or extend the limitations period pursuant to the federal discovery rule, or the doctrines of equitable tolling or continuing violation. The Court has also, and separately, concluded that the Moving Defendants have shown that Johnson's allegations do not otherwise state plausible claims for relief under each of these statutes.

And here, the record of Johnson's Chapter 13 bankruptcy case also shows that Johnson has asserted claims arising from substantially similar allegations, in two prior adversary proceedings, and then voluntarily dismissed those claims. That is, this is at least the third time that Johnson's lending discrimination claims have been before this Court in one form or another.

The record further shows that Johnson's Chapter 13 bankruptcy case is coming to a close. That is, Johnson filed his bankruptcy case in October 2009, and the five-year term of his plan concludes in October 2014. This Circuit has adopted "the general rule that related proceedings ordinarily should be dismissed following the termination of the underlying bankruptcy case." *Porges v. Gruntal & Co. (In re Porges)*, 44 F.3d 159, 162 (2d Cir. 1995). Dismissal of an adversary proceeding upon the dismissal of the underlying bankruptcy case is favored, because

the Court's exercise of jurisdiction over the adversary proceeding depends on its nexus with the main case.  *Id.*

At the same time, the record shows that this is the first time that Johnson's allegations have been tested on the merits.  And while the Court concludes that they fall short because they are untimely and because they are not adequately pleaded, that is not the same as concluding that his claims could not adequately be pleaded.

Johnson's allegations and the reasonable inferences that they support with respect to his New York Banking Law Section 6-*l* claims show that Johnson's home loan has a maximum interest rate that may exceed the APR "high cost" home loan threshold – but it is not clear from the record whether that threshold was actually passed.  They also show that Johnson was charged points and fees that approach – but do not cross – the "high cost" home loan threshold of Section 6-*l*.  And it appears from the record that these claims are time-barred.  But while these claims fall short as presently pleaded, it is not clear that an attempt to replead would be futile.

In addition, Johnson's allegations and the reasonable inferences that they support with respect to his FHA claims show that Johnson is a member of a protected class and that he entered into a home loan and mortgage.  He alleges that the "Discretionary Pricing Policy" of some or all of the defendants, while facially neutral, caused a disproportionately adverse effect on him and other African-American borrowers, and that he and others who are similarly situated suffered financial harm and hardship.  The Court has concluded that these claims are time-barred, and that these allegations fall short of stating a claim, because stating these conclusions – as opposed to alleging facts – is not sufficient to state these claims for relief.  But it is not clear from the record that an attempt to replead would be futile.

In similar fashion, Johnson's allegations and the reasonable inferences that they support with respect to his ECOA claims show that Johnson is a member of a protected class and that he entered into a home loan and mortgage. He alleges that the Defendants engaged in activities in the primary and secondary mortgage markets that had a disproportionate and adverse effect on African-American borrowers. And Johnson alleges that the "Discretionary Pricing Policy" of some or all of the defendants, while facially neutral, caused a disproportionately adverse effect on him and other African-American borrowers, and that he and others who are similarly situated suffered financial harm and hardship. Here too, the Court has concluded that these claims are time-barred, and that these allegations fall short of stating a claim, because stating these conclusions – as opposed to alleging facts – is not sufficient to state these claims for relief. But again, it is not clear from the record that an attempt to replead would be futile.

Finally, Johnson's allegations and the reasonable inferences that they support with respect to his Civil Rights Act claims show that Johnson is a member of a protected class and that he entered into a home loan and mortgage. He alleges that the Defendants engaged in activities in the primary and secondary mortgage markets that had a disproportionate and adverse effect on African-American borrowers, and that they did so with malice and reckless indifference to his civil rights, amounting to intentional discrimination. And Johnson alleges that the "Discretionary Pricing Policy" of some or all of the defendants, while facially neutral, caused a disproportionately adverse effect on him and other African-American borrowers, and that he and others who are similarly situated suffered financial harm and hardship. Here as well, the Court has concluded that these claims are time-barred, and that these allegations fall short of stating a claim, because stating these conclusions – as opposed to alleging facts – is not sufficient to state

58

these claims for relief.  But again, it is not clear from the record that an attempt to replead would be futile.

In sum, the record shows that while Johnson has taken several opportunities to allege claims of discriminatory lending against the Defendants, this is the first time that those claims have been tested by the standards of a motion to dismiss.  The record also shows that as pleaded in the Amended Complaint, those allegations fall short, and do not state a claim upon which relief may be granted.  And the record of Johnson's Chapter 13 bankruptcy case indicates that it will remain before this bankruptcy court for no longer than a period of several months, before the five-year term of Johnson's Chapter 13 plan is concluded.  But the record also shows that many of Johnson's allegations raise serious questions, and as this Court and others have found, "where a plaintiff has made a single attempt to state a claim, and the prospect of a plausible claim is suggested, but not established, by the allegations, then it may be that the Court's discretion should tip in favor of allowing an amendment."  *Ridley*, 453 B.R. at 77.

For these reasons, and based on the entire record, the Court concludes that leave to replead should be granted.

## Conclusion

For the reasons stated herein, and based on the entire record, the motions of Wells Fargo, Bank of America, and Morgan Stanley to dismiss Johnson's claims under New York State Banking Law, the FHA, the ECOA, and the Civil Rights Act are granted, and Johnson is granted leave to replead those claims.  Pursuant to 28 U.S.C. § 157(c), this Memorandum Decision shall serve as proposed findings of fact and conclusions of law as to those claims, and pursuant to Bankruptcy Rule 9033, the Clerk of the Court is directed to serve this Memorandum Decision on

all parties by mail and to note the date of mailing on the Court's docket.

Further, for the reasons stated herein, and based on the entire record, the motion of Wells Fargo and Bank of America to dismiss Johnson's objection to their proof of claim is denied.

An order in conformity with this Memorandum Decision shall be entered simultaneously herewith.



Dated: Brooklyn, New York
August 22, 2014

Elizabeth S. Stong
United States Bankruptcy Judge